PEPPER HAMILTON LLP
Robert S. Hertzberg (RH 7433)
The New York Times Building, 37th Fl.
620 Eighth Avenue
New York, NY 10018-1405

-and-

Deborah Kovsky-Apap (DK 6147)
PEPPER HAMILTON LLP
Suite 3600
100 Renaissance Center
Detroit, MI 48243-1157
(313) 259-7110
*Attorneys for Plymouth Rubber Company, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION, et al.,<br><br>      Debtors. | Chapter 11<br><br>Bankr. Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |
| Plymouth Rubber Company, LLC,<br><br>      Appellant,<br><br>v.<br><br>Delphi Corp., et al.,<br><br>      Appellees. | Case No. 1:09-cv-08408<br><br>Hon. Naomi Reice Buchwald |

MEMORANDUM OF LAW OF APPELLANT PLYMOUTH RUBBER COMPANY, LLC IN SUPPORT OF ITS APPEAL FROM BANKRUPTCY COURT'S ORDER PURSUANT TO 11 U.S.C. § 503(b)(9) AND FED. R. CIV. P. 3007 (I) DENYING PLYMOUTH RUBBER COMPANY, LLC'S MOTION FOR LEAVE TO FILE LATE CLAIM AND (II) DISALLOWING AND EXPUNGING PROOF OF CLAIM NUMBER 19506

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF APPELLATE JURISDICTION..................................................... 1

II.   STATEMENT OF ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW.................... 1

III.  STATEMENT OF THE CASE ........................................................................ 1

    A.   Nature of the Case............................................................................ 1

    B.   Statement of Facts and Prior Proceedings ................................................ 2

        1.   Events Underlying Plymouth Rubber's Administrative Expense Claim..................... 2

        2.   The Modification of the Bar Date Established by the Confirmed First Amended Plan................. 3

        3.   The Debtors Served the Bar Date Notice on a  Predecessor Entity of Plymouth Rubber at an Outdated Address and Counsel for the Predecessor Entity, But Failed to Serve Plymouth Rubber's Known Counsel ................................................................ 6

        4.   Plymouth Rubber Acted Upon the Bar Date Notice As Soon As It Was Received by Versa........ 8

        5.   The Bankruptcy Court Refused to Deem Plymouth Rubber's Administrative Claim Timely Filed . 8

IV.   ARGUMENT.......................................................................................... 9

    A.   Summary of Argument ........................................................................ 9

    B.   Standard of Review on Appeal.............................................................. 10

    C.   The Bankruptcy Court Erred by Failing to Find that an Order Modifying the Bar Date Established by the Confirmed First Amended Plan, Which Was Entered Without Giving Plymouth Rubber Notice and an Opportunity to Be Heard as Required by 11 U.S.C. § 1127(b), Was Void as to Plymouth Rubber ...................................................................... 11

    D.   The Bankruptcy Court Erred by Finding that the Debtors Provided Adequate Notice of the Modified Bar Date to Plymouth Rubber, Where the Debtors Served a Predecessor Entity and Failed to Serve Plymouth Rubber's Counsel in the Michigan and Massachusetts Actions, Who Were Known to the Debtors............................................................ 14

    E.   The Bankruptcy Court Erred by Failing to Find that the Late Filing of Plymouth Rubber's Claim Should Be Permitted Under the Doctrine of Excusable Neglect. .................................. 17

        1.   The Bankruptcy Court Erroneously Applied a Presumption Against Plymouth Rubber ............. 17

        2.   The Bankruptcy Court Erred by Resolving the Balance of Fault for the Delay *Against* Plymouth Rubber Instead of in Favor of Plymouth Rubber.................................................. 20

3.    The Bankruptcy Court Improperly Considered Facts Not in Evidence in Determining that Plymouth Rubber's Delay Prejudiced the Debtors ............................................................... 22

V.    REQUEST FOR ORAL ARGUMENT ........................................................................ 24

VI.    CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

### CASES

Axinn v. Metropolitan Dist. Servs., Inc. (In re Golden Distributors, Ltd.),
128 B.R. 349 (Bankr. S.D.N.Y. 1991) ............................................................ 15, 16, 17

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
187 F.3d 229 (2d Cir. 1999) ................................................................................ 10

Cohen v. TIC Fin. Sys. (In re Ampace Corp.),
279 B.R. 145 (Bankr. D. Del. 2002) ............................................................ 11, 12, 13

Farley Inc. v. Ohio Bureau of Workers' Compensation,
213 B.R. 138 (N.D. Ill. 1997) .............................................................................. 21

Heirs of Hodge v. Flynn,
2007 WL 2727263 (S.D. Miss. Sept. 17, 2007) .................................................... 24

Hoyt v. Modern Millwork & Design, Inc.,
2000 WL 626903 (D. Conn. Mar. 27, 2000) ........................................................ 24

In re Arts Des Provinces de France, Inc.,
153 B.R. 144 (Bankr. S.D.N.Y. 1993) ...................................................... 21, 22, 23

In re Dartmoor Homes, Inc.,
175 B.R. 659 (Bankr. N.D. Ill. 1994) .................................................................. 21

In re Downtown Inv. Club III,
89 B.R. 59 (9th Cir. BAP 1988) ............................................................................ 12

In re Ernst,
382 B.R. 194 (S.D.N.Y. 2008) .............................................................................. 10

In re FCX, Inc.,
853 F.2d 1149 (4th Cir. 1988) .............................................................................. 12

In re Grand Union Co.,
204 B.R. 864 (Bankr. D. Del. 1997) ................................................................ 15, 16

In re Ionosphere Clubs, Inc.,
208 B.R. 812 (S.D.N.Y. 1997) .............................................................................. 12

In re Marcus Hook Development Park, Inc.,
943 F.2d 261 (3d Cir. 1991) ................................................................................ 19

Kuhl v. United States,
   467 F.3d 145 (2d Cir. 2006) .................................................................................. 10

Mason v. City of Chicago,
   436 F. Supp. 2d 946 (N.D. Ill. 2006) ..................................................................... 24

Mullane v. Cent. Hanover Bank & Trust Co.,
   339 U.S. 306 (1950) ................................................................................................ 14

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship,
   507 U.S. 380 (1993) .........................................................................................passim

Quinn v. Teti,
   234 F.3d 1262 (2d Cir. 2000) ................................................................................. 11

Torres v. $36,256.80 U.S. Currency,
   25 F.3d 1154 (2d Cir. 1994) ................................................................................... 14

United States v. Eccles,
   850 F.2d 1357 (9th Cir. 1988) ............................................................................... 18

## Statutes

11 U.S.C. § 503(b) .......................................................................................................... 1

11 U.S.C. § 1127(b) ..................................................................................................passim

28 U.S.C. § 158(a)(1) ..................................................................................................... 1

I.    STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders and decrees.  The bankruptcy court's Order Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 (I) Denying Plymouth Rubber Company LLC's Motion for Leave to File Late Claim and (II) Disallowing and Expunging Proof of Claim Number 19506, from which Plymouth Rubber Company, LLC appeals, is a final order.

II.    STATEMENT OF ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW

1.  Did the bankruptcy court err by failing to find that an order modifying the bar date established by the Debtors' confirmed plan, which was entered without giving Plymouth Rubber notice and an opportunity to be heard as required by 11 U.S.C. § 1127(b), was void as to Plymouth Rubber?  The bankruptcy court's decision is subject to *de novo* review.

2.  Did the bankruptcy err by finding that Plymouth Rubber received adequate notice of the modified bar date, where the Debtors did not properly name Plymouth Rubber in their mailing and failed to serve Plymouth Rubber's known counsel?  The bankruptcy court's decision is subject to *de novo* review.

3.  Did the bankruptcy court err by failing to find that Plymouth Rubber's late filing of its administrative claim was the result of excusable neglect?  The bankruptcy court's decision is subject to *de novo* review.

4.  Did the bankruptcy court err by relying on facts not in evidence in finding that the Debtors would be prejudiced if Plymouth Rubber's claim were deemed to be filed timely?  The bankruptcy court's decision is reviewed for clear error.

III.    STATEMENT OF THE CASE

A.    Nature of the Case

This appeal arises out of the bankruptcy court's denial of the motion of Plymouth Rubber Company, LLC ("Plymouth Rubber") for an order deeming its administrative claim against the Delphi Automotive Systems, LLC ("Delphi Automotive") timely filed.  In June 2009, the Debtors modified the administrative claims bar date established by their Confirmed First Amended Plan without notice to Plymouth Rubber, shortening the deadline considerably.  Although Delphi Automotive and Plymouth Rubber have been engaged in actively litigating Plymouth Rubber's post-petition claims against Delphi

Automotive in actions pending in Michigan and Massachusetts for over a year, the Debtors failed to serve notice of the new, shortened bar date on Plymouth Rubber's known counsel in those actions.   When Plymouth Rubber finally received notice of the new bar date – one day after the bar date had passed – it acted immediately to apprise Debtors' bankruptcy counsel of its claim and filed a formal proof of claim (predicated on the active litigation pending in Michigan and Massachusetts) shortly afterward.

Plymouth Rubber then filed a motion seeking to have its formal proof of claim deemed timely. Plymouth Rubber asserted a number of bases on which its claim should be deemed timely, including the improper modification of the bar date established by the Confirmed First Amended Plan without compliance with 11 U.S.C. § 1127(b); the lack of adequate notice to Plymouth Rubber; and excusable neglect.   The bankruptcy court denied Plymouth Rubber's motion and disallowed and expunged its claim.

**B.** **Statement of Facts and Prior Proceedings**

**1.** **Events Underlying Plymouth Rubber's Administrative Expense Claim**

In 2004, Plymouth Rubber and Hebei Huaxia Group entered into a joint venture agreement and formed Plymouth Yongle Tape (Shanghai) Co., Ltd. ("Yongle").   P-9,[1] Ex. B at 10-12; P-11 at 7 n.6. Plymouth Rubber made certain of its intellectual property available to Yongle in exchange for the exclusive right in the Western Hemisphere (the "Exclusivity Agreement") to purchase and sell proprietary products manufactured using that intellectual property (the "Proprietary Products").  P-9, Ex. B at 10-12.

On October 8 and October 14, 2005, Delphi Corporation and certain of its affiliates, including Delphi Automotive, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   On or around August 30, 2006, Delphi Automotive issued a purchase order to Plymouth Rubber for the supply of 100% of Delphi Automotive's requirements for certain parts, including

---

[1]        References bearing the prefix "P" are to documents designated by Plymouth Rubber in the Record on Appeal. References bearing the prefix "D" are to documents designated by the Debtors in the Record on Appeal.

Proprietary Products.  Id., Ex. A at 9.  The purchase order was revised to reflect increased pricing and reissued on or around January 30, 2008.  Id., Ex. A at 10.  In or around May 2008, however, Delphi Automotive began communicating with Yongle regarding direct purchases of the Proprietary Products from Yongle, and in or around July 2008 purported to terminate its purchase order to Plymouth Rubber and contracted directly with Yongle, in violation of the Exclusivity Agreement, for the supply of Proprietary Products.  Id., Ex. A at 11-13; Ex. B at 14-16.

On or around September 12, 2008, Delphi Automotive commenced an action against Plymouth Rubber in Michigan state court (the "Michigan Action"), and on or around December 8, 2008 Plymouth Rubber counter-claimed for Delphi Automotive's contractual breaches of the January 2008 purchase order.  P-9 at Ex. A.  On or around September 18, 2008, Yongle commenced an action against Plymouth Rubber in the district court for the District of Massachusetts (the "Massachusetts Action").  Plymouth Rubber subsequently asserted counter-claims against both Yongle and Delphi Automotive for various torts, including tortious interference with contractual relations, misappropriation of intellectual property and civil conspiracy.  Id. at Ex. B.

Plymouth Rubber's administrative claim against Delphi Automotive arises out of the counter-claims asserted in the Michigan and Massachusetts Actions.  Id. at 3.  As a direct result of the tortious acts and contractual breaches by Delphi Automotive that form the basis of Plymouth Rubber's claim, Plymouth Rubber was forced to shut down, let go all of its employees, and is currently in the process of winding up. P-9 at ¶ 20; P-11, Ex. B at ¶ 2; P-17 at 11-12.

### 2.    The Modification of the Bar Date Established by the Confirmed First Amended Plan

On December 10, 2007, the Debtors filed the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, which was modified and confirmed (the "Confirmed First Amended Plan") by order of the bankruptcy court on January 25, 2008 (the

"Confirmation Order"). See P-1; P-2. The Confirmed First Amended Plan provided that requests for payment of administrative expenses "be filed . . . no later than 45 days after the Effective Date." P-1 at § 10.5.[2] The Confirmation Order confirmed this administrative claims bar date (the "Bar Date"). P-2, at ¶ 40.

As it transpired, the Confirmed First Amended Plan was not consummated when anticipated because, as the bankruptcy court explained, "asserting breaches, the plan investors under that plan refused to close in April 2008. That left Delphi with a significant hole in the required funding for the confirmed plan. Delphi then spent close to a year dealing with ways to plug that hole as well as to address the further deterioration in the financial markets and in their perception of Delphi's value. . . ." P-17 at 28:9-14.

The Debtors ultimately were able to reach agreements with other parties for the funding necessary to consummate a plan, and accordingly sought to modify the Confirmed First Amended Plan by motion filed on June 1, 2009. See P-17 at 28:17 – 29:6; see also P-3 (the "Modification Motion").

By the Modification Motion, the Debtors sought two forms of relief. First, the Debtors sought approval of certain modifications to Confirmed First Amended Plan and related disclosure statement, and approval of the procedures and notices for re-soliciting votes of affected classes on the Confirmed First Amended Plan, as modified (the "Modified Plan"). The Debtors anticipated that there would be a preliminary modification hearing to approve documents and procedures for re-solicitation, with a final hearing (the "Final Modification Hearing") to be set by the bankruptcy court to confirm the Modified Plan. P-3 at ¶¶ 10, 61. Among the modifications to the Confirmed First Amended Plan sought by the Debtors were a new definition of "Administrative Claims Bar Date" and the establishment of a bar date for pre-confirmation administrative claims of no later than July 10, 2009. See Id., Ex. 1-B at §§ 1.3, 10.2. The

---

[2]    Section 1.3 of the Confirmed First Amended Plan, which defines the term "Administrative Claims Bar Date," provides that such bar date "shall be 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court." In confirming

(continued...)

Debtors conceded in their Modification Motion that their efforts to modify the Confirmed First Amended Plan were governed by the requirements of 11 U.S.C. § 1127(b).  Id. at ¶ 18.

The Debtors also sought a modification of the Bar Date established by the Confirmed First Amended Plan.  Id. at 3 ("The Debtors also request the setting of a bar date for filing proofs of administrative expense for postpetition claims arising before June 1, 2009. . . ."). However, the Debtors did not recognize that this plan modification was similarly governed by § 1127(b), but rather argued that the bankruptcy court was empowered to modify the Bar Date provision of the Confirmed First Amended Plan pursuant to "Bankruptcy Code sections 105 and 503, together with Bankruptcy Rules 2002(a)(7), 3003, 9006(c)(2), Local Rule 3003-1, and General Order M-279."  Id. at ¶ 66.  The Debtors sought entry of an order modifying the Confirmed First Amended Plan's Bar Date prior to the Final Modification Hearing.  The Debtors did not serve notice of the Modification Motion on Plymouth Rubber.  P-5.

On June 16, 2009, the bankruptcy court entered an Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization[3] and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date (the "Modification Procedures Order").  See P-7.  The Modification Procedures Order – without reference to or acknowledgment of the Bar Date already established by the Confirmed First Amended Plan – set July 15, 2009 as the new bar date for administrative expense claims (the "Modified Bar Date").  Id. at ¶ 38.

_____

(continued...)

the Confirmed First Amended Plan, the bankruptcy court did not modify the bar date proposed by the plan.  P-1 at § 1.3; P-2 at ¶ 40.

[3]       It is unclear from the text of the Modification Procedures Order how the bankruptcy court purported to "approve" the proposed modifications to the Confirmed First Amended Plan while at the same time setting a final hearing date to consider those modifications.

The Modification Procedures Order also set the Final Modification Hearing to consider approval of the Modified Plan – including proposed modifications to the definition of "Administrative Claims Bar Date" under § 1.3 of the Confirmed First Amended Plan and the addition of new § 10.2 establishing a bar date for pre-confirmation administrative claims – to commence on July 23, 2009.[4]  Id. at ¶ 9.

The Debtors did not serve notice of the Modification Procedures Order or of the Final Modification Hearing on Plymouth Rubber.  See P-8.

On July 29, 2009, the bankruptcy court held the Final Modification Hearing, and on July 30, 2009, it entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified, and (II) Confirmation Order (Docket No. 12359) (the "Modification Order").  See P-10.  The Modification Order included a finding that the "Debtors are properly seeking to modify the Confirmed Plan and the Confirmation Order pursuant to section 1127(b) of the Bankruptcy Code and Article 14.3 of the Confirmed Plan."  Id. at ¶ B.  The Modified Plan confirmed by the Modification Order included modification of the Bar Date established by the Confirmed First Amended Plan.

> **3.** **The Debtors Served the Bar Date Notice on a Predecessor Entity of Plymouth Rubber at an Outdated Address and Counsel for the Predecessor Entity, But Failed to Serve Plymouth Rubber's Known Counsel**

On or about June 20, 2009, the Debtors' claims agent mailed copies of the notice of the Modified Bar Date (the "Bar Date Notice") to "Plymouth Rubber Company, Inc.," a predecessor entity of Plymouth Rubber,[5] at various addresses.  Those addresses included Plymouth Rubber Company, Inc.'s former

---

[4]        This hearing date was later re-set for July 29, 2009.

[5]        On July 5, 2005, Plymouth Rubber Company, Inc., a Massachusetts corporation, filed for relief under chapter 11 of the Bankruptcy Code.  Pursuant to Plymouth Rubber Company, Inc.'s plan of reorganization, the effective date of which occurred on or around August 31, 2006, Plymouth Rubber Company, LLC emerged as the successor to Plymouth Rubber Company, Inc., with new equity, new directors and new counsel.  Burns & Levinson – the law firm that received notice of the Modified Bar Date – served as Plymouth Rubber Company, Inc.'s general bankruptcy counsel during the course of its bankruptcy case.  At no point

(continued...)

bankruptcy counsel, Burns & Levinson – a firm that has never represented Plymouth Rubber – and 500 Turnpike Road in Canton, Massachusetts, a facility that Plymouth Rubber formerly leased.  P-11, Ex. B at ¶¶ 5-6; Ex. C (attachments).

Because Plymouth Rubber is no longer operating and no longer leases the property at 500 Turnpike Road, mail sent to that outdated address is automatically forwarded to a P.O. box owned by an affiliate of Plymouth Rubber.  Id., Ex. B at ¶ 5.  A former Plymouth Rubber employee, Stephen Collins, has been retained on a consultancy basis to assist with ministerial aspects of Plymouth Rubber's wind-down and report to Versa Capital Management, Inc. ("Versa"), Plymouth Rubber's manager.  Id., Ex. B at ¶ 3. Every couple of weeks, Mr. Collins picks up forwarded mail from the P.O. box.  Id., Ex. B at ¶ 5.  On July 9, 2009, Mr. Collins collected mail from the P.O. box, including the Bar Date Notices addressed to "Plymouth Rubber Company, Inc.," and forwarded the items to Versa.  Id., Ex. B at ¶ 6. Versa received the Bar Date Notices on July 16, 2009 – one day after the Modified Bar Date.  Id., Ex. C at ¶ 2.

The Debtors did *not* serve the Bar Date Notice on Plymouth Rubber's counsel.  P-8.  The Debtors were well aware that Plymouth Rubber was and is represented by counsel in connection with its post-petition claims against Delphi Automotive, as well as the identity of that counsel, since the Debtors have been involved in contentious litigation with Plymouth Rubber's counsel in both the Michigan Action and the Massachusetts Action for the past year, and counsel for Plymouth Rubber is identified in the Complaints filed by Plymouth Rubber in those Actions.  P-9 at Exs. A, B.  The Debtors' in-house counsel, James Derian, has been directly and personally involved in the Michigan Action.  P-11 at 23 n.10.  The Michigan Action and Massachusetts Action are the very lawsuits out of which Plymouth Rubber's administrative

_____

(continued...)

on or after the formation of Plymouth Rubber did Burns & Levinson serve as counsel to Plymouth Rubber.  P-15 at ¶¶ 2-3; P-17 at 8:7 – 9:10.

claims against the Debtors arise, as the Debtors were also well aware.    Nonetheless, the Debtors failed to apprise Plymouth Rubber's counsel of the impending modified Bar Date, or to serve a copy of the Bar Date Notice on Plymouth Rubber's counsel.  P-8; P-11 at 23 n.10.

### 4.    Plymouth Rubber Acted Upon the Bar Date Notice As Soon As It Was Received by Versa

The same day that Versa received the Bar Date Notice, Plymouth Rubber's counsel, Duane Morris, contacted the Debtors' bankruptcy counsel to alert them to the issue and to request that Plymouth Rubber's claim be deemed timely.  P-11 at Ex. D, ¶¶ 2-3.  By the following day, July 17, 2009, Duane Morris had provided the Debtors' bankruptcy counsel with all relevant information pertaining to Plymouth Rubber's administrative claim.  Id. at ¶ 29.

On July 20, 2009, Plymouth Rubber and the Debtors – including the Debtors' in-house counsel, Mr. Derian – participated in a mediation session relating to Plymouth Rubber's post-petition claims against Delphi Automotive in the Michigan and Massachusetts Actions.  Id. at 23 n.10.  Plymouth Rubber then filed a formal administrative expense claim, incorporating the information that had already been provided to the Debtors' bankruptcy counsel (the "Administrative Claim").  The Administrative Claim was received by the Debtors' claims agent on July 30, 2009.  See P-9.

### 5.    The Bankruptcy Court Refused to Deem Plymouth Rubber's Administrative Claim Timely Filed

On July 31, 2009, the day after the Administrative Claim was received by the Debtors' claims agent, Plymouth Rubber filed its Motion for Order Deeming Administrative Claim of Plymouth Rubber Company, LLC Timely Filed and For Related Relief (the Motion").  See P-11.  The Motion asserted a number of grounds on which Plymouth Rubber's Administrative Claim should be deemed filed timely, including the impropriety of modifying the Bar Date established by the Confirmed First Amended Plan without compliance with the requirements of § 1127(b); the inadequate notice of the Modified Bar Date provided by the Debtors; and the fact that Plymouth Rubber's neglect, if any, in filing its Administrative

Claim late was excusable under Bankruptcy Rule 9006 and applicable law. Id., *passim*.

The Debtors objected to the Motion, and the bankruptcy court held a hearing on August 20, 2009. See P-17. The bankruptcy court dismissed Plymouth Rubber's argument that the modification of the Confirmed First Amended Plan's Bar Date was improper for failure to comply with § 1127(b). The bankruptcy court found instead that it had the power to effect such modification because of "the debtors' need to set an earlier bar date" and because the extant Confirmation Order was "clearly outdated." Id. at 33:22-23, 34:4-5. The bankruptcy court further found that the notice of the Modified Bar Date provided to Plymouth Rubber was adequate even though the Debtors served a predecessor entity of Plymouth Rubber and failed to serve Plymouth Rubber's current, known counsel. Id. at 34:12 – 36:8, 38:3 – 39:4. The bankruptcy court then analyzed four factors to determine whether Plymouth Rubber's failure to file its Administrative Claim timely was the result of excusable neglect. The bankruptcy court concluded that there was some fault on both sides, but resolved that conflict in favor of the Debtors. Id. at 41:24 – 43:7.

The bankruptcy court denied Plymouth Rubber's Motion. Id. at 44:24-25. An order to that effect, and expunging the Administrative Claim, was entered on August 31, 2009. P-18. Plymouth Rubber filed this appeal on September 8, 2009.

## IV.    ARGUMENT

### A.    Summary of Argument

There are at least three independent reasons why the bankruptcy court's decision denying Plymouth Rubber's Motion and expunging its Administrative Claim must be reversed. First, the bankruptcy court erroneously concluded that the Bar Date established by the Confirmed First Amended Plan was properly modified, even though Plymouth Rubber did not receive notice or an opportunity to be heard as required by 11 U.S.C. § 1127(b). Second, the bankruptcy court erroneously concluded that Plymouth Rubber had received adequate notice of the Modified Bar Date where the Debtors failed to serve Plymouth Rubber's known counsel, even though Plymouth Rubber was in wind-down and the Debtors had previously

dealt exclusively with Plymouth Rubber's counsel regarding its claim.  Finally, applying an improper presumption against Plymouth Rubber and relying in part on facts not in the record, the bankruptcy court erroneously concluded that Plymouth Rubber's late filing was not the result of "excusable neglect," even though the Debtors themselves were guilty of significant neglect in the service of the Bar Date Notice.

Each of these erroneous legal conclusions, and the bankruptcy court's clear error in assuming facts not in evidence, independently requires reversal of the bankruptcy court's order denying Plymouth Rubber's Motion, and entry of an order reinstating Plymouth Rubber's Administrative Claim and deeming such claim filed timely.

**B.**    Standard of Review on Appeal

On appeal, the court reviews the legal conclusions of the bankruptcy court *de novo*.  Kuhl v. United States, 467 F.3d 145, 147 (2d Cir. 2006).  In this matter, the bankruptcy court reached the conclusions (1) that it had authority to modify the Bar Date established by the Plan without compliance with compliance with § 1127(b); (2) that Delphi was not required to provide notice of the Bar Date to Plymouth Rubber's known counsel; and (3) that Plymouth Rubber's failure to file its claim timely was not the result of excusable neglect under applicable law.  Each of these is a legal conclusion or an application of the law to the facts and is therefore subject to *de novo* review by this Court.  See N.Y. City Empl.'s Retirement Sys. v. Sapir In re Taylor), 243 F.3d 124, 128 (2d Cir. 2001); Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 238 (2d Cir. 1999).

The bankruptcy court also determined that deeming Plymouth Rubber's claim filed timely would prejudice the Debtors because it could impact the feasibility of the Modified Plan.  This finding of fact is reviewed for clear error.  In re Ernst, 382 B.R. 194, 197 (S.D.N.Y. 2008).

**C.**     **The Bankruptcy Court Erred by Failing to Find that an Order Modifying the Bar Date Established by the Confirmed First Amended Plan, Which Was Entered Without Giving Plymouth Rubber Notice and an Opportunity to Be Heard as Required by 11 U.S.C. § 1127(b), Was Void as to Plymouth Rubber**

The Confirmed First Amended Plan established that the Bar Date for filing requests for payment of administrative expenses was "45 days after the Effective Date."  P-1 at § 10.5; see also P-2 at ¶ 40 (confirming the Bar Date as 45 days after the Effective Date).  The debtors sought to modify the Bar Date established by the Confirmed First Amended Plan by a motion filed on June 1, 2009.  See P-3 at 39 ("The Debtors propose that the Court establish 5:00 p.m. (prevailing Eastern time) as the deadline for submitting all Administrative Expense Claims (the 'Administrative Expense Bar Date') for the period from the commencement of these cases through June 1, 2009.").

A deadline established by a confirmed plan of reorganization is a substantive matter, constituting a "modification" under 11 U.S.C. § 1127(b).  See Cohen v. TIC Fin. Sys. (In re Ampace Corp.), 279 B.R. 145, 152 (Bankr. D. Del. 2002) ("[I]n a chapter 11 case, the parties may choose to fix a time for filing objections to claims in the plan of reorganization.  If, as here, the parties choose to do so, the resulting deadline, which is akin to a statute of limitations, certainly constitutes a substantive matter."); see also Quinn v. Teti, 234 F.3d 1262, 1262 (2d Cir. 2000) (characterizing a statute of limitations as "substantive law").

In Ampace, the court, in reasoning that a claims objection deadline set by a plan of reorganization could not be modified except in compliance with § 1127(b), further explained:

> In addition, although "modification" is not defined in the Bankruptcy Code, courts that have analyzed the issue of whether a subsequent change to a confirmed plan of reorganization constitutes a "modification" distinguish between the courts' inability to "modify" a plan and their ability to "clarify a plan where it is silent or ambiguous," and/or "'interpret' plan provisions to further equitable concerns." . . .  With regard to the instant dispute, there is nothing in the Plan for the Court to interpret or clarify. . . .  [The Plan's] language clearly and unambiguously sets a time limit within which the Trustee could object to claims.  Although in most confirmed chapter 11 plans a limitation such as this one is often followed by language providing that such limitation is "subject to being extended by the Bankruptcy Court upon motion of [Agent/Trustee/Committee] *without notice or a hearing*," (an "Extension Provision") in this case it was not.  Had section 12.1 of the Plan included such language, the Trustee could have unilaterally moved to

> extend the applicable deadline without notice and a hearing.  Absent such language, *unless the Plan is otherwise modified in accordance with § 1127(b)*, both parties are bound to the terms of the Plan and the Objections Deadline contained therein.

Ampace, 279 B.R. at 152-53 (citations omitted) (emphases added).  Here, similarly, the Confirmed First Amended Plan clearly and unambiguously provides that the Bar Date is 45 days after the Effective Date, unless the bankruptcy court orders otherwise (which the bankruptcy court did not do in the Confirmation Order or in any manner provided by § 1127(b)).  Thus, any alteration of Bar Date provided by the Plan is not a "clarification" or an "interpretation," but rather is a "modification" within the meaning of § 1127(b).  Furthermore, the Confirmed First Amended Plan, like the plan in Ampace, contains no language permitting the bankruptcy court to modify the Bar Date "without notice and a hearing."  Thus, the Confirmed First Amended Plan could only be amended in accordance with § 1127(b).

Modification of a confirmed plan under § 1127(b) requires "(1) notice of a proposed plan modification, (2) notice of the information necessary for a creditor to assess the nature and impact of the modification, (3) a hearing on the propriety of the proposed modification, (4) an opportunity for an impaired creditor to object to the modification, and (5) an assessment by the bankruptcy court that the modified plan meets the requirements of § 1129."  In re FCX, Inc., 853 F.2d 1149, 1156 (4th Cir. 1988); see also In re Ionosphere Clubs, Inc., 208 B.R. 812, 816 (S.D.N.Y. 1997) ("Permitting appellees to modify a provision that explicitly was incorporated into a reorganization plan as occurred here would permit circumvention of the bankruptcy process. . . .  Only after *notice and an opportunity to be heard* may the Bankruptcy Court alter the legal relationships among the debtor and its creditors and other parties in interest.") (emphasis added).[6]

An order that purports to modify a confirmed plan without providing affected creditors with the requisite notice and opportunity to be heard is void.  See In re Downtown Inv. Club III, 89 B.R. 59, 63 (9th

---

[6]    Although Ionosphere involved a post-consummation modification to extend the debtor's time to assume or reject a lease, the principle articulated by the court comports broadly with the requirements of § 1127(b), which mandates "notice and a hearing" before a modification of a plan becomes the plan.  11 U.S.C. § 1127(b).

Cir. BAP 1988) ("Andrew never received notice of debtor's motion to modify the plan. . . .  The modifications clearly affected Andrew.  Therefore, Andrew is entitled to relief under Rule 60(b)(4) and all orders entered without notice to Andrew are void.") (citations omitted).; see also Ampace, 279 B.R. at 153 (". . . I find that because the Objections Deadline was extended via motions filed pursuant to Rule 9006, and without prior notice and a hearing in accordance with § 1127(b), the orders granting such motions are ineffective.").  Here, Plymouth Rubber never received notice of the Modification Motion, which sought to modify the Bar Date established by the Confirmed First Amended Plan.  See P-5, P-6.  It never had the opportunity to object to the modification of the Bar Date established by the Confirmed First Amended Plan, even though such modification clearly affected it.  Thus, the Bar Date Order entered by the bankruptcy court on June 16, 2009, modifying the Bar Date, was void and ineffective as to Plymouth Rubber.

The bankruptcy court, in determining that the modification of the Confirmed First Amended Plan was proper, focused on the fact that the plan itself contemplated the possibility that a different Bar Date might be established and, as a general matter, fully reserved the Debtors' rights in the event that the plan did not go effective.  See P-17 at 32:24 – 33:5.  But where the bankruptcy court erred in its analysis is that, while the court plainly had the power to modify the Bar Date established by the Confirmed First Amended Plan and the Debtors' rights were reserved, *these powers and rights were subject to the requirements of § 1127(b)*.  Cf. Ampace, 279 B.R. at 153 (holding that, absent specific language in a confirmed plan authorizing the modification of a deadline without notice or hearing, the plan may only be modified in accordance with § 1127(b)).  By its terms, § 1127(b) specifically applies to the modification of chapter 11 plans that have been confirmed but have not yet become effective.

The bankruptcy court justified its modification of the Bar Date by pointing to the debtors' need for such modification:  "However, the debtors' need to set an earlier bar date, given the changes to their plan was clear and required the establishment of a different bar date. . . ."  P-17 at 33:22-25.  The bankruptcy court's analysis misses the point – it does not matter how well-justified the debtors' request for a

modification is; indeed, § 1127(b) requires a finding that the circumstances warrant *any* requested modification.  The debtors' need does not excuse them from compliance with the notice and hearing requirements of § 1127(b).  The plain language of the statute requires that modifications to a confirmed plan be confirmed by a court "after **notice** and a hearing" (emphasis added).  There is no exception under § 1127(b) for modifications to plans just because a debtor has a "need" for such modification, or because the court believes that the order confirming the plan is "outdated."  See P-17 at 34:5.  Plymouth Rubber is unaware of any case law in the Second Circuit or elsewhere carving out such an extraordinary exception to § 1127(b).  Indeed, it would completely gut § 1127(b) to hold that where a debtor "needs" modification of an "outdated" provision of a confirmed plan, a court may modify such confirmed plan without regard to § 1127(b)'s notice and hearing requirements.  Accordingly, the bankruptcy court's conclusion that Plymouth Rubber was bound by the Modification Procedures Order, without having been provided notice or an opportunity to be heard, was erroneous as a matter of law and must be reversed.

> **D.** **The Bankruptcy Court Erred by Finding that the Debtors Provided Adequate Notice of the Modified Bar Date to Plymouth Rubber, Where the Debtors Served a Predecessor Entity and Failed to Serve Plymouth Rubber's Counsel in the Michigan and Massachusetts Actions, Who Were Known to the Debtors**

The Debtors were required to provide "notice reasonably calculated, under all the circumstances, to apprise [Plymouth Rubber] of the pendency of the [bar date]."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1161 (2d Cir. 1994) (quoting Mullane).  Under the circumstances in this case, the Debtors' service of the Bar Date Notice was *not* "reasonably calculated" to apprise Plymouth Rubber of the Modified Bar Date.

First, Plymouth Rubber sent notice only to "Plymouth Rubber Company, Inc.," not Plymouth Rubber.  P-11, Ex. B at ¶¶ 5-6; Ex. C (attachments).  Plymouth Rubber is a successor entity to Plymouth Rubber Company, Inc. with different ownership, different corporate form, and different counsel.  P-15 at ¶¶ 2-3; P-17 at 8:7 – 9:10.  Indeed, the bankruptcy court itself recognized that "there was potentially some

room for confusion, given that the notice was addressed to Inc. as opposed to LLC." P-17 at 42:10-12. In a similar case involving the adequacy of notice of a bar date, the Bankruptcy Court for the Southern District of New York determined that a bar date notice to a lessor had been "misdirected" where the debtors sent the notice to the lessor at his place of business and addressed the notice to Donald E. Axinn Companies, rather than to Donald E. Axinn, individually. <u>Axinn v. Metropolitan Dist. Servs., Inc. (In re Golden Distributors, Ltd.)</u>, 128 B.R. 349, 350-51 (Bankr. S.D.N.Y. 1991). Even though the bar order was actually received at Mr. Axinn's place of business well before the bar date, the court found the misdirection to be a significant factor in rendering the notice inadequate. <u>Id.</u> ("The notice requirement was further tainted by the fact that the bar order was misdirected. Metropolitan's lessor was Donald Everett Axinn, individually, and not his company, Donald E. Axinn Companies. . . . There is no excuse for failing to mail the copy of the bar order to the individual who was Metropolitan's lessor.").

Second, the Debtors chose not to provide notice of the Modified Bar Date to Plymouth Rubber's counsel, even though the Debtors' counsel had been involved in active litigation with Plymouth Rubber's counsel relative to Plymouth Rubber's post-petition claims against Delphi Automotive. <u>See</u> P-9 at Exs. A, B. The bankruptcy court noted that Plymouth Rubber, in arguing that notice should have been provided to its counsel, relied primarily upon <u>In re Grand Union Co.</u>, 204 B.R. 864 (Bankr. D. Del. 1997), "in which the bankruptcy court concluded . . . that the debtors' direct mailing of notice to personal injury tort claimants represented by counsel was inadequate notice of the bar date, and that the notice should have been provided to the personal injury counsel that Grand Union was dealing with." P-17 at 35:2-8.

The bankruptcy court attempted to distinguish <u>Grand Union</u> from the facts of this case: "I should note further that Judge Walsh, in the Grand Union case, made it clear that he was focusing on the unique facts before him, where he found that the claimants who received the notice were unsophisticated, and that all dealings in respect of their claims had previously been through their respective counsel. Clearly, Plymouth is not an unsophisticated tort claimant here." <u>Id.</u> at 35:22 – 36:3. While Plymouth Rubber is not

an unsophisticated tort claimant, its status as a company in wind-down made it equally impaired in its ability to protect its interests without notice to counsel. Furthermore, the dealings in respect of Plymouth Rubber's post-petition claims against Debtors, like those in <u>Grand Union</u>, *have* been through their respective counsel in the Michigan and Massachusetts Actions – a circumstance necessitated by the fact that Plymouth Rubber *has no employees*. P-11 at Ex. B, ¶¶ 2, 4; P-17 at 12:2-4.

In <u>Golden Distributors</u>, the lessor's attorney had not appeared in the bankruptcy case, but had made himself known to debtors' counsel. <u>Golden Distributors</u>, 128 B.R. at 350. The debtors failed to serve the bar date notice on the lessor's attorney. <u>Id.</u> The court viewed the debtors' failure to do so as another nail in the coffin of the adequacy of the notice: "To make matters worse, counsel for the lessor, who contacted the debtors' counsel for information as to whether or not his client's lease was to be rejected, was never served with a copy of the bar order." <u>Id.</u> Here, similarly, Debtors' counsel, including their in-house counsel, Mr. Derian, have dealt directly and extensively with Plymouth Rubber's counsel regarding Plymouth Rubber's claims against the Debtors. P-11 at ¶ 16 and 23 n.10. Plymouth Rubber does not argue that notice to a creditor's attorneys is required in every situation. Under the facts and circumstances here, however, notice to Plymouth Rubber's known counsel was clearly warranted, where the Debtors commenced post-petition litigation against Plymouth Rubber and the Debtors seek to cut off Plymouth Rubber's counter-claim in such litigation.[7] Even if the Debtors' failure to serve Plymouth Rubber's known counsel does not, by itself, render the notice inadequate, it is clearly a factor that should be weighed – as the bankruptcy court below failed to do.

The court in <u>Golden Distributors</u> considered these factors – misdirection of the bar date notice and failure to provide notice to counsel, both of which are present in this case – and concluded that the debtors

---

[7] The Debtors commenced the Michigan Action. P-9 at Ex. A. While the Debtors did not commence the Massachusetts Action, they have been active participants in that litigation. P-9 at Ex. B; P-11 at ¶ 16.

had not provided adequate notice to the creditor.[8]  "In the instant case, an order bearing a caption which omits the name of the debtor involved, which is misdirected to an entity other than the named creditor and which is not served on the creditor's counsel after he made himself known to the debtors' counsel, ***does not satisfy the requirement of adequate notice***."  Golden Distributors, 128 B.R. at 351 (emphasis added).  The court then explained that because notice was inadequate, it did not need to reach the question of whether there had been "excusable neglect" on the part of the creditor.  "The cause of the delay in not filing a proof of claim on the part of the creditor was the inadequate notice. . . .  Accordingly, the lessor . . . need not rely on the doctrine of excusable neglect in requesting an extension of time to file a proof of claim. . . ."  Id. at 351.

Here, similarly, the Debtors misdirected the Bar Date Notice to a predecessor entity and failed to serve Plymouth Rubber's counsel, even though Plymouth Rubber's counsel had certainly made themselves known to the Debtors' counsel.  Given this combination of factors, the bankruptcy court's conclusion that the Debtors provided Plymouth Rubber with adequate notice of the Modified Bar Date was in error and must be reversed.

>    **E.**    **The Bankruptcy Court Erred by Failing to Find that the Late Filing of Plymouth Rubber's Claim Should Be Permitted Under the Doctrine of Excusable Neglect.**
>
>    **1.**    **The Bankruptcy Court Erroneously Applied a Presumption Against Plymouth Rubber**

The bankruptcy court correctly held that the factors to be considered in determining whether a late filing is the result of "excusable neglect" are those articulated by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship, 507 U.S. 380 (1993):  "'The danger of prejudice to the debtor; the

---

[8]    The court in Golden Distributors also considered a third factor:  that the name of the debtor against which the lessor had a claim did not appear in the caption of the bar date notice.  Id. at 351.  Here, likewise, the name "Delphi Automotive Systems, LLC" – the debtor against which Plymouth Rubber holds an administrative claim – did not appear in the caption or anywhere in the body of the Bar Date Notice, although the name "Delphi Corporation" did appear. P-7 at Ex. L.

length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith.'"[9] P-17 at 40:21-25 (quoting <u>Pioneer</u>, 507 U.S. at 395). However, the bankruptcy court incorrectly imposed a presumption against Plymouth Rubber in evaluating the Plymouth Rubber factors.

The bankruptcy court quoted the Second Circuit for the proposition that "[t]he equities will rarely, if ever, favor a party who fails to follow the *clear dictates of a Court rule*. Where the rule is *entirely clear*, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." P-17 at 41:16-21 (citation omitted) (emphases added). In effect, the bankruptcy court found that there was a presumption against Plymouth Rubber. This presumption was inappropriate, because the bankruptcy court's dictates in this case were *unclear*.

The bankruptcy court issued an order purportedly establishing a new bar date for administrative expense claims, while in the very same order it set a final hearing date to consider modifications to the Confirmed First Amended Plan – *including the new bar date itself*. <u>See</u> P-7 at ¶¶ 9, 38. There is a cart-and-horse problem here:  Either the Modification Procedures Order, entered on June 16, 2009, improperly approved plan modifications more than a month *before* the final hearing to consider such plan modifications, in violation of § 1127(b), or else the Modification Order, entered on July 30, 2009, improperly established a *retroactive* administrative claims bar date. <u>See, e.g.</u>, <u>United States v. Eccles</u>, 850 F.2d 1357, 1364-65 (9th Cir. 1988) (citing numerous cases holding that it would be inequitable to apply shortened deadlines or statutes of limitations retroactively).

Adding to the confusion, at the time that the Modification Procedures Order was entered on June 16, 2009, the Confirmation Order, which – like the Confirmed First Amended Plan – provided for a 45-day

---

[9]    The only two <u>Pioneer</u> factors actually analyzed by the bankruptcy court were the danger of prejudice to the Debtors and the reason for the delay: there was no dispute that the delay was very short, or that Plymouth Rubber acted in good faith. <u>See, e.g.</u>, P-17 at 41:9-10, 43:8-9.

post-Effective Date administrative claims bar date was still "an extant order." P-17 at 33:18:22. *No* order even purported to modify the **Confirmation Order** until the bankruptcy court entered the Modification Order on July 30, 2009. See P-10 at ¶ A ("On January 25, 2008 (the "Confirmation Date"), the Court entered the Confirmation Order. The Confirmation Order has not been revoked, withdrawn or vacated and remains in full force and effect, except as may be modified by this order."). Thus, until the Modification Order was entered, there were two conflicting orders of the bankruptcy court in effect – the Confirmation Order, which, via the Confirmed First Amended Plan, provided for an administrative claims bar date 45 days after the Effective Date (which had not yet occurred), and the Modification Procedures Order, which provided for an administrative claims bar date on July 15, 2009. See P-2 at ¶ 40; P-7 at ¶ 38.

The existence of conflicting orders creates a "controversy" that requires reconciliation. See, e.g., In re Marcus Hook Development Park, Inc., 943 F.2d 261, 262 (3d Cir. 1991) ("At the center of the dispute are conflicting orders of the bankruptcy court which alternatively approved the sale of a piece of property, free of any liens . . . and then reimposed a lien after the sale had been made. We will reverse the district court and order it to remand the case to the bankruptcy court so that the bankruptcy court may resolve this controversy."). In Marcus Hook, the Third Circuit noted its concerns that "it is doubtful that an estate can be fully administered . . . until conflicting orders are reconciled." Id. at 265. Here, similarly, the Debtors' estate cannot be fully administered unless and until the bankruptcy court's conflicting orders, which substantially affected Plymouth Rubber's rights, are resolved.

Given these circumstances, the bankruptcy court evaluated Plymouth Rubber's conduct, and considered whether such conduct constituted excusable neglect, under the wrong standard. This was not a situation where "the rule is entirely clear," giving rise to a presumption against the tardy claimant. Rather, this was a situation where – due to the bankruptcy court's conflicting orders – the rule was anything *but* clear.

   2.    **The Bankruptcy Court Erred by Resolving the Balance of Fault for the Delay *Against* Plymouth Rubber Instead of in Favor of Plymouth Rubber**

The bankruptcy court primarily focused on the Pioneer factor regarding "the reason for the delay and whether it was in the movant's reasonable control."  P-17 at 41:4-8 (citing In re Musicland Holding Corp., 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006).  The bankruptcy court found this to be "somewhat a closed [*sic*] case in that . . . Plymouth Rubber was clearly in wind-down mode" and "the very limited nature of its operations . . . meant that Mr. Collins checked the post office box only roughly once every two weeks."  Id. at 42:1-8.  Nonetheless, the bankruptcy court held that Plymouth Rubber had some responsibility for the delay because, in the court's opinion, Mr. Collins should have opened and read the mail instead of simply forwarding it to Versa.  Id. at 42:13-23.

On the other hand, the bankruptcy court also noted some fault on the part of the Debtors.  "In addition the time for the bar date notice was shortened here from the normal time that would usually be provided.  And finally, there was potentially some room for confusion, given that the notice was addressed to Inc. as opposed to LLC."  Id. at 42:8-12.[10]   The bankruptcy court should also have considered in this analysis – but did not – the fact that the Debtors failed to serve the Bar Date Notice on Plymouth Rubber's known counsel.  Even if the failure to serve Plymouth Rubber's known counsel is not, by itself, dispositive, it clearly bears on the issue of whether the Debtors were neglectful.

The bankruptcy court then weighed Plymouth Rubber's neglect and the Debtors' neglect and concluded that "all things being considered, it appears to me that while this is a somewhat closed [*sic*] case, the neglect here was largely within the control of Plymouth."  Id. at 43:4-7.

In the absence of all of the defects in the entry of the Modification Procedures Order and the

---

[10]     The bankruptcy court did not accept the argument that notice was insufficient where "the notice was sent to 'Inc.' as opposed to 'LLC' albeit at the same address."  P-17 at 38:15-18.  However, the bankruptcy court *did* recognize, correctly, that the Debtors' misdirection of the notice could cause some confusion.  Id. at 42:10-12.

service of the Bar Date Notice, the bankruptcy court's conclusion might be warranted.  But in this case, even if Plymouth Rubber is partially responsible for the delay, the Debtors *also* acted neglectfully.  Where both the creditor and the debtor are equally guilty of neglect in the handling of the creditor's claim, the issue should be resolved *in favor of the creditor.*  See, e.g., In re Arts Des Provinces de France, Inc., 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993) ("In the instant case, the debtors may not assume the role of righteous indignation when they contributed to the confusion."); Farley Inc. v. Ohio Bureau of Workers' Compensation, 213 B.R. 138, 143 (N.D. Ill. 1997) (noting that the creditor's late filing did not excuse the debtor's own negligence and stating that "'[W]hen both the debtor and creditor are guilty of significant negligence in the handling of a claim and the debtor is aware of a creditor's claim, then . . . "a tie goes to the [creditor]."' . . . .  That reasoning is equally applicable here and is consistent with Chapter 11's aim of avoiding forfeitures by creditors.") (citations omitted; alteration in original); In re Dartmoor Homes, Inc., 175 B.R. 659, 668 (Bankr. N.D. Ill. 1994) ("This Court holds that when both the debtors and creditor are guilty of significant negligence in the handling of a claim and the debtor is aware of the creditor's claim, then, to quote a classic rule of baseball, 'a tie goes to the runner.' . . . This being the case, the Court will exercise its discretion to relieve [the creditor] of culpability. . . .").

In Arts des Provinces, the debtors had first established one bar date, then – without notice to the affected creditor – shortened the filing deadline.  The debtors also failed to serve the creditor's attorney with notice of the bar date.  Arts des Provinces, 153 B.R. at 147.  The court noted that the creditor was "not entirely blameless.  It did receive actual notice of the bar date . . . in time to file a timely proof of claim. . . . Therefore, it may be concluded that [the creditor] and its agents were neglectful in filing a proof of claim six days after the bar date when they had prior actual knowledge of the bar date."  Id.  The court concluded, however, that even though the creditor was neglectful and could have filed a claim timely, such neglect was excused by the fact that the debtor was *also* neglectful.  Id.

Here, even assuming *arguendo* that Plymouth Rubber was neglectful, it is clear – as the bankruptcy court recognized – that the Debtors were also neglectful.  A tie goes to the runner; thus, the bankruptcy court's failure to resolve the Motion in favor of Plymouth Rubber was an error and must be reversed.

### 3. The Bankruptcy Court Improperly Considered Facts Not in Evidence in Determining that Plymouth Rubber's Delay Prejudiced the Debtors

The bankruptcy court improperly relied upon facts not in evidence in finding that the Debtors would be prejudiced if Plymouth Rubber's claim were deemed to be filed timely.  At the hearing on Plymouth Rubber's Motion, the bankruptcy court asked Debtors' counsel whether there was "an estimate of allowed administrative claims" that was a factor in the negotiation of the Modified Plan.  Id. at 19:11-21. This was a pertinent question because, as part of the modification of the Confirmed First Amended Plan, the Debtors reached an agreement with the new plan sponsors whereby there would be an "acquisition of most of the debtors' business operations in return for sufficient cash to deal with a portion of the administrative claims against the debtors. . . ." Id. at 28:20-24.

The Debtors' attorney conceded that no ceiling on administrative claims had been determined by the parties negotiating the Modified Plan:

> MR. BUTLER:  It was intentional that – and one of the things we fought for in the MDA was not to have dollar cap limitations.  There were, in fact – that was a subject of protracted negotiations, actually, as to whether or not there would be limitations and what those liabilities would be and, instead, the agreement was to do it by category.

Id. at 19:22 – 20:8.

The bankruptcy court further explored whether the administrative liability to Plymouth Rubber had been taken into account in the declarations in support of the modifications to the Confirmed First Amended Plan.  Id. at 24:22-25.  Debtors' counsel, noting that Debtors' declarant was not present, was unable to answer with certainty but could only state what he *thought* the declarant, Mr. Stipp, *would* say:  "My *understanding* is the answer to that question is no, there was no money allocated to this amount through

the – whether the claims process was evaluated. . . .  And I *think* – you know, I don't have Mr. Stipp here, Your Honor, but Ms. Kraft is here and she works closely with Mr. Stipp.  I *think* that Mr. Stipp would tell you that if he had an extra twenty million dollar – if in fact, taking their – I think we disagree vigorously with the claim, but if you add another twenty million dollars of litigation exposure to the pot, would that be material, I *think* Mr. Stipp would say yes, it's material." Id. at 25:1 – 26:2 (emphases added).

Debtors' counsel did not offer an explanation for why Plymouth Rubber's claim had not been taken into account by the Debtors, where the Debtors were actively litigating the claim prior to the modification hearing and, in fact, Debtors' in-house counsel, Mr. Derian, participated in a mediation of Plymouth Rubber's claim nine days before the modification hearing and at least five days before the Debtors began assessing administrative claims for purposes of the modification hearing.   See id. at 25:16-18 ("MR. BUTLER: . . . And the assessment was actually made in the days – we spent three or four days leading up to the July 29th hearing going over this evaluation and assessment.").

Nor did Debtors' counsel explain, and the record does not reflect, how or why an additional $20 million claim was material to feasibility in light of the fact that it represented less than 2% of the approximately $1 *billion* in administrative claims, *plus unliquidated amounts*, that had been asserted.  See id. at 29:13-18.   Furthermore, the bankruptcy court failed to note that the Modified Plan allows new administrative claims arising on or after June 1, 2009 – in amounts that the Debtors could not possibly estimate in attempting to determine feasibility – to be filed as late as 30 days after the Effective Date.  D-4 at § 10.5.  The facts before the bankruptcy court clearly showed that Plymouth Rubber's claim, while substantial, represented only a miniscule portion of the administrative claims that have been and may still be filed against the Debtors.

Without actually ascertaining any facts, and instead relying on Mr. Butler's statement that he *thought* the Debtors' declarant *would have* said that Plymouth Rubber's claim was material to feasibility, the

bankruptcy court concluded that the <u>Pioneer</u> factor of "prejudice to the debtor" weighed against Plymouth Rubber:

> It's been stated that a demand number under the counterclaim by Plymouth Rubber is approximately twenty million dollars. That number would have had a significant impact on the debtors' presentation of the modification of the plan on July 29th and the Court's consideration of whether the plan is feasible or was feasible, and would have, if asserted as a recovery against the debtors – the surviving debtors, an administrative claim could have had a very significant impact on feasibility.

P-17 at 43:25 – 44:15. Yet there was no evidence before the bankruptcy court that Plymouth Rubber's claim "would have had a significant impact on the debtors' presentation of the modification of the plan." Indeed, the bankruptcy court itself appeared to recognize the speculative nature of its conclusions when it stated that Plymouth Rubber's administrative claim "*could have* had a very significant impact on feasibility." <u>Id.</u> at 44:14-15 (emphasis added). These are not factual findings; they are speculations based on unsupported assumptions.

It is well established that a court may not assume facts not in evidence. <u>See, e.g.</u>, <u>Heirs of Hodge v. Flynn</u>, 2007 WL 2727263, at *4 (S.D. Miss. Sept. 17, 2007) ("The Court cannot assume facts not in evidence. . . ."); <u>Mason v. City of Chicago</u>, 436 F. Supp. 2d 946, 954 (N.D. Ill. 2006); <u>Hoyt v. Modern Millwork & Design, Inc.</u>, 2000 WL 626903, at *4 (D. Conn. Mar. 27, 2000). Accordingly, the bankruptcy court's conclusion that deeming Plymouth Rubber's claim timely would prejudice the Debtors is without factual support, and must be reversed.

## V.    REQUEST FOR ORAL ARGUMENT

Because Plymouth Rubber believes that oral argument will significantly aid the Court's decisional process, Plymouth Rubber respectfully requests oral argument in this matter.

## VI.    CONCLUSION

For the foregoing reasons, Plymouth Rubber respectfully requests that the Court reverse the order of the bankruptcy court and direct that an order be entered reinstating Plymouth Rubber's Administrative

Claim and deeming the Administrative Claim to be filed timely.

Dated:  October 23, 2009                          Respectfully submitted,

                                                  PEPPER HAMILTON LLP

                                                  /s/ Robert S. Hertzberg_____ _____
                                                  Robert S. Hertzberg (RH 7433)
                                                  The New York Times Building, 37th Fl.
                                                  620 Eighth Avenue
                                                  New York, NY 10018-1405
                                                  (212) 808-2700
                                                  hertzbergr@pepperlaw.com

                                                  -and-

                                                  Deborah Kovsky-Apap (DK 6147)
                                                  Suite 3600
                                                  100 Renaissance Center
                                                  Detroit, MI 48243
                                                  (313) 259-7110
                                                  kovskyd@pepperlaw.com

                                                  *Attorneys for Plymouth Rubber Company, LLC*