SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti
Beverly A. Farrell

Attorneys for Appellees DPH Holdings Corp., et al.,
 Reorganized Debtors

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| PLYMOUTH RUBBER COMPANY, LLC, | : | |
| | : | |
| Appellant, | : | |
| | : | Case No. 09-CV-08408 |
| v. | : | |
| | : | ECF Case; Electronically Filed |
| DELPHI CORPORATION, et al., | : | |
| | : | Hon. Naomi Reice Buchwald |
| Appellees. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRIEF OF APPELLEES DPH HOLDINGS CORP., ET AL.
(FORMERLY KNOWN AS DELPHI CORPORATION, ET AL.)

<u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF
      APPELLATE REVIEW ......................................................................................... 1

STATEMENT OF THE CASE ........................................................................................ 2

STATEMENT OF THE FACTS ...................................................................................... 5

      A.     The Reorganized Debtors Have Substantially Consummated The Modified
             Plan ........................................................................................................... 5

      B.     Plymouth Rubber's Involvement In The Debtors' Chapter 11 Cases ...................... 7

      C.     The Bar Dates For Administrative Expense Claims .................................. 7

      D.     Plymouth Rubber's Claim And The Motion .............................................. 9

      E.     The Bankruptcy Court's Order Denying The Motion ............................... 9

ARGUMENT ................................................................................................................. 10

I.      PLYMOUTH RUBBER RECEIVED ADEQUATE NOTICE OF THE
       ADMINISTRATIVE CLAIMS BAR DATE ................................................... 10

II.     THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN
       DETERMINING THAT PLYMOUTH RUBBER FAILED TO ESTABLISH
       EXCUSABLE NEGLECT .................................................................................. 13

      A.     The Reason For The Delay Was Within Plymouth Rubber's Control ................... 14

      B.     The Bankruptcy Court Properly Found That Granting The Motion Would
             Be Prejudicial .......................................................................................... 17

III.    THE DEBTORS DID NOT NEED TO MODIFY THE CONFIRMED PLAN TO
       SET A NEW ADMINISTRATIVE CLAIMS BAR DATE ............................. 20

IV.    PLYMOUTH RUBBER'S APPEAL IS EQUITABLY MOOT ....................... 22

V.     CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

Cases                                                                                                                    Page(s)

Ad Hoc Committee of Kenton County Bondholders v. Delta Air Lines, Inc., 309
    Fed. Appx. 455, 457 (2d Cir. 2009) ...........................................................................2

In re Alexander's Inc., 176 B.R. 715 (Bankr. S.D.N.Y. 1995) ......................................11

In re Arts des Provinces de France, Inc., 153 B.R. 144 (Bankr. S.D.N.Y. 1993)....................16, 17

Asbestos Personal Injury Plaintiffs v. Travelers Indemnity Co. (In re Johns-
    Manville Corp.), 476 F.3d 118 (2d Cir. 2007)................................................13

Axinn v. Metropolitan Distribution Services, Inc. (In re Golden Distributors, Ltd.),
    128 B.R. 349 (Bankr. S.D.N.Y. 1991)......................................................11, 12

Borden v. Brunswick Baptist Church (In re Brunswick Baptist Church), No. 03-
    13719, 2007 WL 160749 (N.D.N.Y. Jan. 16, 2007)..........................................10

In re Calpine Corp., 390 B.R. 508 (S.D.N.Y. 2008)..................................................24, 25

In re Chateaugay Corp., 10 F.3d 944 (2d Cir. 1993) ..................................................24

Cohen v. TIC Financial Systems (In re Ampace Corp.), 279 B.R. 145 (Bankr. D.
    Del. 2002) ...............................................................................................4, 21, 22

In re Dartmoor Homes, Inc., 175 B.R. 659 (Bankr. N.D. Ill. 1994)..............................17

Dependable Insurance Co. v. Horton (In re Horton), 149 B.R. 49 (Bankr. S.D.N.Y.
    1992) ...........................................................................................................11

In re Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ....................20

Farley Inc. v. Ohio Bureau of Workers' Compensation, 213 B.R. 138 (N.D. Ill.
    1997) ...........................................................................................................17

Good v. Bascon, Inc. (In re Heartland Steel, Inc.), No. IP 02-1252-C-M/F, 2003
    WL 21508233 (S.D. Ind. June 26, 2003).........................................................21

In re Grand Union Co., 204 B.R. 864 (Bankr. D. Del. 1997)......................................10

Heirs of Hodge v. Flynn, No. 2:07cv40-KS-MTP, 2007 WL 2727263 (S.D. Miss.
    Sept. 17, 2007).............................................................................................19

Hixon v. Poppin & Shier, No. 88-15448, 1990 WL 4866 (9th Cir. Jan. 24, 1990)..................4, 22

Hoyt v. Modern Millwork & Design, Inc., No. 3:97cv01804 JCH, 2000 WL
    626903 (D. Conn. Mar. 27, 2000) .......................................................................19

Integrated Resources, Inc. v. Ameritrust Co. National Ass'n (In re Integrated
    Resources, Inc.), 157 B.R. 66 (S.D.N.Y. 1993) ................................................13

In re LeBlanc, Inc., 299 B.R. 546 (Bankr. N.D. Iowa 2003) .......................................13

Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.), 166 B.R. 799
    (S.D.N.Y. 1994) ................................................................................................20

Mason v. City of Chicago, 436 F. Supp. 2d 946 (N.D. Ill. 2006) ................................20

Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron
    Corp.), 419 F.3d 115 (2d Cir. 2005) .......................................................2, 14, 20

Nalco Chemical Co. v. LTV Steel Co. (In re Chateaugay Corp.), No. 92 Civ. 8722,
    1993 WL 127180 (S.D.N.Y. Apr. 22, 1993) ................................................ 18-19

In re New York State Trap Rock Corp., 153 B.R. 648 (Bankr. S.D.N.Y. 1993) ..........20

Jian Hua Xia v. Gonzales, 247 Fed. Appx. 241 (2d Cir. 2007) ....................................6

Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507
    U.S. 380 (1993) .................................................................................................14

Retired Pilots Ass'n of US Airways, Inc. v. US Airways Group, Inc. (In re US
    Airways Group, Inc.), 369 F.3d 806 (4th Cir. 2004) ................................5, 24-25

In re R.H. Macy & Co., 161 B.R. 355 (Bankr. S.D.N.Y. 1993) ...........................11, 14

Singh v. U.S. Dep't of Homeland Sec., 526 F.3d 72 (2d Cir. 2008) ...............................6

Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355 (2d Cir. 2003) ..............................14

United States v. Delphi Corp. (In re Delphi Corp.), Case No. 08-CV-3753, 2009
    WL 803598 (S.D.N.Y. Mar. 24, 2009) .......................................................2, 13

United States v. Enron Corp. (In re Enron Corp.), 364 B.R. 482 (S.D.N.Y. 2007)......13

Windels Marx Lane & Mittendorf, LLP v. Source Enterprises, Inc. (In re Source
    Enterprises, Inc.), 392 B.R. 541 (S.D.N.Y. 2008) ...........................................24

Statutes

11 U.S.C. § 101(10)(A) ..............................................................................................13

11 U.S.C. § 1127 ................................................................................ 2, 4, 6, 21-23

Del. Code Ann. tit. 6, § 18-214(f) ...........................................................13

Del. Code Ann. tit. 8, § 266(h) ...............................................................13

Rules

Fed. R. Bankr. P. 2002(g)(1) ..................................................................12

Other Authorites

Bankr. S.D.N.Y. General Order M-350: Amended Procedural Guidelines For
    Filing Requests For Bar Orders In The United States Bankruptcy Court
    For The Southern District Of New York .........................................22

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (the "Reorganized Debtors" or "DPH Holdings") submit this brief in opposition to the appeal of Plymouth Rubber Company, LLC ("Plymouth Rubber") from an order entered on August 31, 2009 (the "Bankruptcy Court Order") (P-18) by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying Plymouth Rubber's motion for leave to file a late proof of claim and related relief (the "Motion") (D-11).

On October 8 and 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates, operating as debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (As Modified).  As a result, the Debtors have emerged from chapter 11 as the Reorganized Debtors and, specifically, Delphi Corporation has emerged from chapter 11 as DPH Holdings.

## STATEMENT OF ISSUES PRESENTED AND
## APPLICABLE STANDARD OF APPELLATE REVIEW

1.      Did the Bankruptcy Court correctly determine that Plymouth Rubber received adequate notice of the July 15, 2009 administrative claims bar date?  The Bankruptcy Court's determination is subject to de novo review to the extent it was based on legal conclusions, and is reviewed for clear error to the extent it was based on factual findings.

2.      Did the Bankruptcy Court correctly determine that Plymouth Rubber failed to establish excusable neglect in connection with its late filing of an administrative expense claim? Although Plymouth Rubber asserts that the Bankruptcy Court's ruling is reviewed de novo (Appellant's Br. 1, 10), it is well-established that determinations regarding excusable neglect are

reviewed for abuse of discretion.  See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 134 (2d Cir. 2005) ("We cannot conclude that the bankruptcy court abused its discretion in finding that [appellant] failed to meet its burden of proving 'excusable neglect,' and in rejecting [appellant's] late-filed claim on that basis."); United States v. Delphi Corp. (In re Delphi Corp.), Case No. 08-CV-3753, 2009 WL 803598, at *2 (S.D.N.Y. Mar. 24, 2009) (Buchwald, J.) (stating that a "bankruptcy judge's excusable neglect determination should not be overturned unless 'no reasonable man could agree with the bankruptcy judge's decision'").

3.      When a confirmed plan of reorganization expressly authorizes the Bankruptcy Court to re-establish a specific bar date, does the Bankruptcy Court's establishment of that bar date constitute a modification of the confirmed plan within the meaning of 11 U.S.C. § 1127(b)? The Bankruptcy Court's determination as to its authority to establish the bar date is subject to de novo review.

4.      Because the Reorganized Debtors substantially consummated this plan of reorganization after the Bankruptcy Court denied Plymouth Rubber's Motion, is Plymouth Rubber's appeal barred under the doctrine of equitable mootness?  The application of this doctrine falls within this Court's discretion.  See Ad Hoc Committee of Kenton County Bondholders v. Delta Air Lines, Inc., 309 Fed. Appx. 455, 457 (2d Cir. 2009).

STATEMENT OF THE CASE

This appeal concerns the failure of Plymouth Rubber to file an administrative expense claim on or before the bar date established by the Bankruptcy Court.  In January 2008, the Bankruptcy Court confirmed a joint plan of reorganization providing that administrative claims must be filed within 45 days after the effective date of the plan, "unless otherwise ordered by the Bankruptcy Court."  (P-2 at 79.)  The Debtors were unable to consummate the confirmed plan,

2

and in June 2009 the Bankruptcy Court entered another order prescribing a new bar date of July 15, 2009 for administrative expense claims arising between the commencement of the Debtors' chapter 11 cases and June 1, 2009.  (P-7 ¶ 38.)  Even though Plymouth Rubber, through its representative, received the notice of the bar date no later than July 9, 2009, Plymouth Rubber failed to file its claim by the July 15, 2009 deadline.  In fact, Plymouth Rubber did not file its claim until July 30, 2009, when the Bankruptcy Court approved modifications to the confirmed plan.

On July 31, 2009, Plymouth Rubber filed with the Bankruptcy Court a motion seeking, among other things, a ruling that the new bar date did not apply to Plymouth Rubber or, in the alternative, that Plymouth Rubber's failure to file a timely claim was the result of excusable neglect.  The Bankruptcy Court rejected Plymouth Rubber's arguments, denied the motion at a hearing on August 20, 2009, and issued a written order dated August 28, 2009 on August 31, 2009.  Plymouth Rubber appeals the Bankruptcy Court's order on the following grounds, none of which warrant a reversal of the Bankruptcy Court's well-reasoned decision.

First, Plymouth Rubber asserts that it did not receive adequate notice of the new bar date, but its position is belied by the following facts, all of which are undisputed.  Notice of the new bar date was served upon counsel for Plymouth Rubber Company, Inc., Plymouth Rubber's legal predecessor.  In addition, notice of the new bar date was delivered to a post office box and actually received by a Plymouth Rubber representative no later than July 9, 2009, six days before the new bar date.  Given the representative's practice of retrieving mail from the post office box only once "[e]very couple of weeks" (Appellant's Br. 7), it is likely that the notice was delivered well before July 9, 2009.  Finally, although Plymouth Rubber complains that its current counsel were not served with the notice, that resulted from Plymouth Rubber's current counsels' failure to take the simple step of filing notices of appearance in the Debtors' chapter 11 cases.

Second, Plymouth Rubber disputes the Bankruptcy Court's ruling regarding excusable neglect, but has not demonstrated that the Bankruptcy Court abused its discretion on this point. The delayed filing of Plymouth Rubber's administrative expense claim was largely caused by a series of actions and omissions within Plymouth Rubber's control, including its representative's lax procedures for retrieving mail, his apparent failure to read or, at a minimum, appreciate the significance of the notice of the new bar date, and current counsels' failure to file notices of appearance. While the length of the delay may appear insignificant, it is important that Plymouth Rubber did not file its claim until after the Bankruptcy Court commenced a hearing on the approval of modifications to the confirmed plan. Those modifications were approved on July 30, 2009 and the Debtors substantially consummated the modified plan on October 6, 2009. Permitting Plymouth Rubber to prosecute its claim at this late stage would result in significant prejudice to the Reorganized Debtors, because they did not take into account Plymouth Rubber's claim of up to $20 million in establishing the Reorganized Debtors' budget or developing the other modifications to the confirmed plan.

Third, relying heavily on Cohen v. TIC Financial Systems (In re Ampace Corp.), 279 B.R. 145 (Bankr. D. Del. 2002), Plymouth Rubber argues that the new bar date is without force as to Plymouth Rubber because the debtors did not satisfy certain procedural requirements set forth in 11 U.S.C. § 1127, which applies to plan modifications. As Ampace itself makes clear, however, the establishment of a new deadline does not constitute a plan modification within the scope of 11 U.S.C. § 1127 when the confirmed plan expressly contemplates changes to the deadline. See id. at 153 (explaining that 11 U.S.C. § 1127 does not apply when confirmed plan includes language allowing establishment of new deadline upon motion); see also Hixon v. Poppin & Shier, No. 88-15448, 1990 WL 4866, at *2 (9th Cir. Jan. 24, 1990) (holding that establishing new deadline did not constitute modification under section 1127 of the Bankruptcy Code when

confirmed plan authorized bankruptcy court to change deadline).  Again, the confirmed plan in this case authorized the Bankruptcy Court to enter an order re-establishing the specific bar date at issue, and that is precisely what happened.

Finally, Plymouth Rubber's appeal is barred by the doctrine of equitable mootness, which provides that when a chapter 11 plan of reorganization has been substantially consummated, an appeal should be dismissed as moot if implementation of the relief sought would be inequitable. In this case, allowing Plymouth Rubber to prosecute its untimely $20 million administrative claim after the Debtors have substantially consummated a plan of reorganization could render the plan infeasible and Plymouth Rubber's appeal therefore is equitably moot.  See Retired Pilots Ass'n of US Airways, Inc. v. US Airways Group, Inc. (In re US Airways Group, Inc.), 369 F.3d 806, 809-10 (4th Cir. 2004) (appeal of order terminating pension dismissed as equitably moot when plan of reorganization had been substantially consummated and appellant never attempted to stay order terminating pension plan or confirmation order).

## STATEMENT OF THE FACTS

A.    The Debtors Have Substantially Consummated The Modified Plan

On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (the "Confirmed Plan") and related disclosure statement.  (P-1.)  The Bankruptcy Court entered an order confirming the Confirmed Plan (the "Confirmation Order") on January 25, 2009, and the order became final on February 4, 2008.  (P-2.)  The Confirmed Plan provided that the deadline for filings requests for payment of administrative claims "shall be 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court."  (P-1 at § 1.3.)

On October 3, 2008, the Debtors filed a motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No.

14310) (the "Plan Modification Motion").  On June 1, 2009, the Debtors filed a supplement to

the Plan Modification Motion, which sought approval of (i) certain modifications to the

Confirmed Plan (the "Modified Plan"), (ii) certain supplemental disclosures, and (iii) procedures

for re-soliciting votes on the Modified Plan.  After holding a final plan modification hearing on

July 29 and 30, 2009 (the "Plan Modification Hearing"), the bankruptcy court entered an order

approving the Modified Plan on July 30, 2009, the same day Plymouth Rubber filed its untimely

claim.  (P-10.)

On October 6, 2009 (the "Effective Date"), the Debtors filed a notice (the "Effective Date

Notice") with the Bankruptcy Court indicating that they had substantially consummated the

Modified Plan.[1]  In connection therewith, DIP Holdco LLP (subsequently renamed Delphi

Automotive LLP, a United Kingdom limited liability partnership), as assignee of DIP Holdco 3

LLC (which was comprised of some of the Debtors' secured lenders), through various

subsidiaries and affiliates, acquired substantially all of the Debtors' global core businesses, and

GM Components Holdings, LLC, a Delaware limited liability company, and Steering Solutions

Services Corporation, a Delaware corporation, acquired certain U.S. manufacturing plants and

the Debtors' non-core steering and halfshaft manufacturing business, respectively.  The

Reorganized Debtors have emerged from chapter 11 as DPH Holdings and affiliates and remain

responsible for certain post-Effective Date activities, including, without limitation, the

---

[1]     In accordance with Fed. R. Evid. 201(b), the Reorganized Debtors request that this Court take judicial notice of
the Effective Date Notice, a copy of which is attached to this brief as Appendix A, and the Reorganized
Debtors' substantial consummation of the Modified Plan on October 6, 2009.  See Singh v. U.S. Dep't of
Homeland Sec., 526 F.3d 72, 80 n.9 (2d Cir. 2008) (taking judicial notice of facts contained in reasonably
accessible court documents when "facts reflected in th[o]se documents [were] not 'subject to reasonable
dispute'"); Jian Hua Xia v. Gonzales, 247 Fed. Appx. 241, 243 n.1 (2d Cir. 2007) (taking judicial notice of facts
in government report when report was "readily accessible" and facts were "not subject to reasonable dispute").
The Reorganized Debtors' emergence from chapter 11 is not subject to reasonable dispute and is capable of
accurate and ready determination by resort to the Effective Date Notice.  The Reorganized Debtors filed the
Effective Date Notice with the Bankruptcy Court and its accuracy cannot reasonably be questioned.

disposition of certain retained assets and payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of the Debtors' chapter 11 cases.

B.    Plymouth Rubber's Involvement In The Debtors' Chapter 11 Cases

On October 21, 2005, the law firm Burns & Levinson LLP sent to the Debtors a reclamation demand on behalf of Plymouth Rubber's predecessor, Plymouth Rubber Company, Inc.  (P-14 ¶ 12.)  On July 28, 2006, Burns & Levinson LLP filed proof of claim number 12359 on behalf of Plymouth Rubber Company, Inc. in the Debtors' chapter 11 cases, asserting a secured claim on account of goods sold to the Debtors prior to the commencement of their chapter 11 cases.  (P-14 ¶ 12.)

C.    The Bar Dates For Administrative Expense Claims

On June 16, 2009, the Bankruptcy Court entered the Modification Procedures Order which, among other things, established July 15, 2009 as the deadline for filing a proof of claim for the purposes of asserting an administrative expense request for the period from the commencement of the Debtors' chapter 11 cases through May 31, 2009 (the "Administrative Claims Bar Date"), and included a notice of the Administrative Claims Bar Date and a form to be used to submit an administrative expense claim (the "Notice").  (P-7 ¶¶ 38-44.)  The Notice stated that the Modification Procedures Order:

> established **July 15, 2009** (the "Administrative Expense Bar Date") as the last date to file proof of administrative expense (each, an "Administrative Expense Claim Form") for the purpose of asserting administrative expense claims ("Administrative Expense Claims" or "Claims"), against Delphi Corporation ("Delphi") and its affiliated debtors and debtors-in-possession (the "Debtors" or "Company"). The Administrative Expense Bar Date and the procedure set out below for filing proofs of administrative expense with respect to Claims apply to all alleged postpetition Claims against the Debtors that arose, accrued, or that were incurred on or before **June 1, 2009**.

(D-6 at 1.)

7

On June 20, 2009, in accordance with the Modification Procedures Order, the Debtors

caused Kurtzman Carson Consultants LLC ("KCC") and Financial Balloting Group LLC, the

claims agent and the noticing and voting agent, respectively, in the Debtors' chapter 11 cases, or

their agents to transmit with the resolicitation materials in connection with the Proposed

Modifications certain procedures for asserting an administrative expense claim and a copy of the

Administrative Claim Form.  (D-7.)

On or before June 20, 2009, KCC served Plymouth Rubber's legal predecessor with a

copy of the Notice by first class mail at each of the addresses below, including the address of

Burns & Levinson LLP, which was set forth on proof of claim number 12359 filed by Burns &

Levinson LLP on behalf of Plymouth Rubber Company, Inc.:

| Plymouth Rubber Co Inc<br>104 Revere St<br>Canton, MA 02021-2996 | Plymouth Rubber Co Inc<br>104 Revere St<br>Gallup Canton, MA 02021 | Plymouth Rubber Co Inc<br>104 Revere St<br>Canton, MA 02021-292 |
| --- | --- | --- |
| Plymouth Rubber Co Inc<br>135 S LaSalle Dept 1621<br>Chicago, IL 60674 | Plymouth Rubber Co Inc<br>Automotive Sales Div<br>104 Revere St<br>Canton, MA 02021-2996 | Plymouth Rubber Company Inc<br>Atten:  Victor Bass Esq<br>Burns & Levinson LLP<br>125 Summer St<br>Boston, MA 02110-1624 |
| Plymouth Rubber Co Inc Eft<br>135 S La Salle Dept 1621<br>Chicago, IL 60674-1621 | Plymouth Rubber Co Inc Eft<br>500 Turnpike St<br>Canton, MA 02021-2723 | Plymouth Rubber Co Inc Eft<br>500 Turnpike St<br>Canton, MA 02021 |

(D-7 at 143, 3806.)

According to Plymouth Rubber, on June 25, 2009, the Notice was forwarded to Plymouth

Rubber's post office box, in accordance with Plymouth Rubber's instructions to the U.S. Postal

Service.  (P-11 ¶¶ 22, 34.)  Plymouth Rubber does not mention whether Burns & Levinson LLP

received the Notice, or whether Burns & Levinson LLP forwarded the Notice to or otherwise

made Plymouth Rubber aware of the new bar date.

8

On July 9, 2009, Stephen Collins, a former Plymouth Rubber employee retained by Versa Capital Management, Inc. ("Versa") to assist in the winding up of Plymouth Rubber's activities and affairs, collected the mail that had been forwarded to Plymouth Rubber's post office box.  (P-11 ¶ 23.)  On July 10, 2009, Mr. Collins purportedly took three copies of the Notice, placed them in an envelope, and delivered them to Randall Schultz, an operating principal of Versa, by first class mail.  (P-11 ¶ 23.)  Mr. Schultz received the package on July 16, 2009.  (P-11 ¶ 24.)  Upon opening the package, he recognized the Notice and delivered it by hand to Versa's counsel, Thomas Kennedy.  (Id.)  Mr. Kennedy contacted Plymouth Rubber's outside counsel, Duane Morris LLP, and forwarded the material to that firm.  (Id.)  Later that same day, Plymouth Rubber's outside counsel contacted the Debtors' counsel and requested that Plymouth Rubber be deemed to have filed a timely claim.  (Id.)  The Debtors declined this request.

D.    Plymouth Rubber's Claim And The Motion

On July 30, 2009 – two weeks after the Administrative Claims Bar Date and almost three weeks after Plymouth Rubber's representative actually received the Notice – Plymouth Rubber filed an administrative expense claim with KCC (the "Plymouth Rubber Claim") related to litigation pending in Michigan state court and the federal district court in Massachusetts (the "Actions").  (P-11 ¶ 14; P-9 at 4.)  The Plymouth Rubber Claim asserts a contingent and unliquidated amount that the Debtors dispute (P-9 at 1), which Plymouth Rubber believes could exceed $20 million (P-17 at 32:5-7; 52:7-9).  On July 31, 2009, Plymouth Rubber filed the Motion.

E.    The Bankruptcy Court's Order Denying The Motion

The Bankruptcy Court held a hearing on the Motion on August 20, 2009.  At the conclusion of the hearing the Bankruptcy Court denied the Motion in a well-reasoned, thorough opinion that spans 18 transcript pages.  (P-17 at 35-53.)  The Bankruptcy Court entered its order

denying the Motion on August 31, 2009 (P-18), and Plymouth Rubber filed a timely notice of appeal from that order.

<u>ARGUMENT</u>

I.

PLYMOUTH RUBBER RECEIVED ADEQUATE NOTICE OF
<u>THE ADMINISTRATIVE CLAIMS BAR DATE</u>

Plymouth Rubber asserts that the Bankruptcy Court erred in determining that the Debtors provided adequate notice of the Administrative Claims Bar Date to Plymouth Rubber. (Appellant's Br. 14.)  It is undisputed that neither Duane Morris LLP nor Pepper Hamilton LLP, counsel for Plymouth Rubber in the underlying Actions, filed a notice of appearance on behalf of Plymouth Rubber in the chapter 11 cases at any point before Plymouth Rubber filed the Motion. (P-17 at 42:21-24.)  Plymouth Rubber relies on <u>In re Grand Union Co.</u>, 204 B.R. 864 (Bankr. D. Del. 1997), for the proposition that its counsel in the Actions were entitled to receive the Notice even though they had not appeared in the chapter 11 cases.

Although Plymouth Rubber acknowledges that the Bankruptcy Court distinguished <u>Grand Union</u> from this case (Appellant's Br. 15; P-17 at 43:25-44:6 ("Clearly Plymouth is not an unsophisticated tort claimant. . . .  I do not believe that the debtors were required to give notice to counsel of record in the pending litigation, particularly as, as I noted, that counsel had not appeared in the Chapter 11 case.")), it fails to address the Bankruptcy Court's determination that <u>Grand Union</u> "flies in the face of a number of cases in the Second Circuit, including in the Southern District of New York."  (P-17 at 43:7-8.)

Cases in the Second Circuit hold that when a debtor complies with the notice requirements of Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), notices need not be sent to counsel representing a creditor even if the debtor has actual knowledge of the representation.  <u>See</u>, <u>e.g.</u>, <u>Borden v. Brunswick Baptist Church</u> (In re

10

Brunswick Baptist Church), No. 03-13719, 2007 WL 160749, at *4 (N.D.N.Y. Jan. 16, 2007)

(rejecting Grand Union and holding debtor not required to send notice to known counsel when

counsel did not file notice of appearance); In re Alexander's Inc., 176 B.R. 715, 721 (Bankr.

S.D.N.Y. 1995) (explaining that debtors were under no obligation to send notices to attorneys

when attorneys had failed to file notices of appearance in bankruptcy case); In re R.H. Macy &

Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) (known creditors are entitled to actual notice of

bar date and debtor is obligated to send notices directly to the creditor unless creditor's agent

affirmatively directs otherwise); Dependable Ins. Co. v. Horton (In re Horton), 149 B.R. 49, 59

(Bankr. S.D.N.Y. 1992) (sufficient notice provided when debtor who knew insurance company

was represented by counsel in indemnity action sent notice to insurance company and not

counsel).

Plymouth Rubber's reliance on Axinn v. Metropolitan Distribution Services, Inc. (In re

Golden Distributors, Ltd.), 128 B.R. 349 (Bankr. S.D.N.Y. 1991), is likewise misplaced. Unlike

the Notice sent to Plymouth Rubber, the bar date notice in Golden Distributors did not comply

with Bankruptcy Rule 2002(g). Id. at 350. The notice in that case was mailed to Donald E.

Axinn Companies to the attention of Leonard Axinn whereas the actual creditor of the debtors

was Donald Everett Axinn, in his individual capacity. Id. at 351.

Here, by contrast, Plymouth Rubber was properly served with the Notice at the exact

address, addressed to the exact entity, as set forth on Plymouth Rubber's legal predecessor's

proof of claim. (P-1 at 1; D-7 at 143.) Bankruptcy Rule 2002(g) provides that:

> Notices required to be mailed under Rule 2002 to a creditor . . . shall
> be addressed as such entity or an authorized agent has directed in its
> last request filed in the particular case. For purposes of this
> subdivision – (A) a proof of claim filed by a creditor . . . that
> designates a mailing address constitutes a filed request to mail notices
> to that address."

11

Fed. R. Bankr. P. 2002(g)(1). The only direction filed in the Debtors' chapter 11 cases by or on behalf of Plymouth Rubber with respect to the mailing of notices was the proof of claim filed by Burns & Levinson LLP, counsel to Plymouth Rubber's legal predecessor.

As described above, the Debtors, through KCC, served Burns & Levinson LLP with a copy of the Notice at that firm's address as set forth on proof of claim number 12359, as well as the other addresses set forth above. Plymouth Rubber never notified the Debtors or the Bankruptcy Court of a change of service address. Therefore, the Debtors fully met their obligations under Bankruptcy Rule 2002(g)(1)(A) to serve Plymouth Rubber with a copy of the Notice. Moreover, it is undisputed that Plymouth Rubber's representative actually received three copies of the Notice no later than July 9, 2009, six days before the Administrative Claims Bar Date.

The Bankruptcy Court considered the argument that the Notice was allegedly insufficient because it was addressed to Plymouth Rubber Company, Inc. rather than Plymouth Rubber, but properly found this argument unpersuasive. (P-17 at 15:12-15.) In particular, even though the Notice was addressed to Plymouth Rubber Company, Inc., it was sent to Plymouth Rubber's post office box and was actually received by "Plymouth Rubber Company, LLC" at that address. (P-17 at 15:12-17.) There is no question that Plymouth Rubber is the legal successor to Plymouth Rubber Company, Inc.: Plymouth Rubber Company, Inc. filed a certificate of conversion with the Delaware Secretary of State showing that on September 1, 2006 it converted from a corporation to an LLC.[2] Plymouth Rubber never filed any notice of this conversion in the

---

[2]    See Del. Code Ann. tit. 8, § 266(h) (2009) ("When a corporation has been converted to another entity or business form pursuant to this section, the other entity or business form shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the corporation. . . ."); see also Del. Code Ann. tit. 6, § 18-214(f) (2009) ("When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the other entity that has converted, and all property, real, personal and mixed, and all debts due to such other entity, as well as all other things and

*(cont'd)*

Debtors' chapter 11 cases, however.  (D-2 at 1.)  The certificate of conversion refutes Plymouth

Rubber's contention that Plymouth Rubber and Plymouth Rubber Company, Inc. are two

fundamentally different entities.  As counsel for Plymouth Rubber explained to the Bankruptcy

Court, "LLC never filed a notice of appearance in this case, has never appeared in this case until

this dispute, and they never felt that they had a need to appear in this case."  (P-17 at 21:5-8

(emphasis added).)  The Debtors accordingly sent the Notice to Plymouth Rubber Company, Inc.,

in accordance with Bankruptcy Rule 2002.

II.

**THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING
THAT PLYMOUTH RUBBER FAILED TO ESTABLISH EXCUSABLE NEGLECT**

Contrary to Plymouth Rubber's assertions that excusable neglect determinations are

reviewed de novo, a bankruptcy court's determinations regarding excusable neglect are reviewed

for an abuse of discretion.  United States v. Enron Corp. (In re Enron), 364 B.R. 482, 485

(S.D.N.Y. 2007).  As this Court noted just months ago in another appeal involving an untimely

claim in the Debtors' chapter 11 cases, "a bankruptcy judge's excusable neglect determination

should not be overturned unless 'no reasonable man could agree with the bankruptcy judge's

decision.'"  Delphi Corp., 2009 WL 803598, at *2 (quoting Integrated Res., Inc. v. Ameritrust Co.

Nat'l Ass'n (In re Integrated Res., Inc.), 157 B.R. 66, 72 (S.D.N.Y. 1993)).

The Second Circuit has adopted a "strict" standard in the area of excusable neglect.

Asbestos Personal Injury Plaintiffs v. Travelers Indem. Co. (In re Johns-Manville Corp.), 476

F.3d 118, 120 (2d Cir. 2007).  In determining the existence of excusable neglect, a bankruptcy

court must analyze and balance "the danger of prejudice to the debtor, the length of the delay and

---

*(cont'd from previous page)*
causes of action belonging to such other entity, shall remain vested in the domestic limited liability company to
which such other entity has converted . . .").

its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).  The Second Circuit has observed that "'the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule,' and 'that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test.'" Enron Corp., 419 F.3d at 123 (quoting Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366-67 (2d Cir. 2003)).  Furthermore, in this case, as the party seeking an extension, Plymouth Rubber bore the burden of proving excusable neglect.  See R.H. Macy & Co., 161 B.R. at 360.

        As a threshold matter, Plymouth Rubber erroneously asserts that, in evaluating whether Plymouth Rubber had carried its burden of proving excusable neglect, the Bankruptcy Court applied a "presumption" against Plymouth Rubber.  (Appellant's Br. at 17-20.)  Plymouth Rubber does not and cannot cite to any portion of the record in support of this contention because the Bankruptcy Court's analysis did not, in fact, involve a presumption of any kind.  Rather, as reflected in the transcript, the Bankruptcy Court engaged in a careful consideration of the Pioneer factors and concluded that Plymouth Rubber had failed to satisfy its burden.  (P-17 at 35-53.)  The Bankruptcy Court did not err in its finding that the Plymouth Rubber failed to present sufficient evidence of excusable neglect.

A.    The Reason For The Delay Was Within Plymouth Rubber's Control

        The most important Pioneer factor in determining excusable neglect is the reason for the delay, including whether the reason for the delay was in the reasonable control of the movant. See Enron Corp., 419 F.3d at 123.  Plymouth Rubber, as part of its winding up of its activities and affairs, had arranged to have its mail forwarded to a post office box that was monitored by a former employee of Plymouth Rubber retained by Plymouth Rubber's manager.  According to

Plymouth Rubber's Motion, on June 25, 2009, the Notice was forwarded to Plymouth Rubber's post office box. ( P-11 ¶ 34.)  Plymouth Rubber's representative did not collect Plymouth Rubber's mail, including the copies of the Notice that had been forwarded, until July 9, 2009, and he did not forward the copies of the Notice to personnel at Versa, Plymouth Rubber's manager, until July 10, 2009.  (P-11 ¶  23.)  According to Plymouth Rubber, those copies were sent by first class mail, rather than a more expedited mode of delivery, and were not received by Versa personnel until July 16, 2009 – the day after the Administrative Claims Bar Date.  (P-11 ¶ 24.)

        The Bankruptcy Court correctly determined that Plymouth Rubber's untimely filing was largely the result of activities within Plymouth Rubber's control, including the fact that Plymouth Rubber (i) checked its mail infrequently, (ii) failed to open the mail upon receipt, and (iii) waited weeks to file its claim after it read the Notice and knew of the Administrative Claims Bar Date. (P-17 at 50:12 to 51:6.)  Had Plymouth Rubber's representative, whose "sole function [] appears to be to monitor the mail," taken appropriate action upon receipt of the copies of the Notice, the delay could have been avoided. ( P-17 at 50:13-24.)  Plymouth Rubber's failure to check the mail regularly, and to take appropriate actions when it was checked, was entirely within Plymouth Rubber's control.

        In attempting to convince this Court to reverse the determination below that the reason for the delay rests with Plymouth Rubber, Plymouth Rubber mischaracterizes both the ruling below and the case law on excusable neglect.

        In an attempt to shift the blame to the Debtors, Plymouth Rubber claims that the Debtors are at least partially responsible for Plymouth Rubber's untimely filing because the Debtors established a bar date that was earlier than the bar date mentioned in the Confirmed Plan.  What Plymouth Rubber fails to appreciate is that the new bar date, although requested by the Debtors, was actually established by an order of the Bankruptcy Court.  Thus, while Plymouth Rubber

argues that the shortened time period should be counted as a point of fault against the Debtors, its position is nothing more than an improper collateral attack on the Bankruptcy Court's Modification Procedures Order.  As the Bankruptcy Court explained at the hearing, there was good reason for modifying the Administrative Claims Bar Date: having entered into an agreement for the sale of a substantial portion of their assets, "the [D]ebtors determined that they needed prompt means to calculate the outstanding administrative claims other than the debtor-in-possession financing claims against them."  (P-17 at 36:20-23.)

Plymouth Rubber also places great emphasis on the fact that the Notices were addressed to Plymouth Rubber Company, Inc., rather than Plymouth Rubber, and argues that this tips the balance in favor of a finding of excusable neglect.  (Appellant's Br. 20.)  As explained above, however, (i) Plymouth Rubber is the legal successor to Plymouth Rubber Company, Inc., (ii) Plymouth Rubber did not file any notice or pleading in the chapter 11 cases to notify the Debtors of the change in name, and (iii) in any event, there is no dispute that at least three copies of the Notice were delivered to Plymouth Rubber's post office box and were actually retrieved by Plymouth Rubber's representative no later than six days before the Administrative Claims Bar Date.  The Bankruptcy Court did not abuse its discretion in giving little weight to Plymouth Rubber's name-change argument.

The excusable neglect cases cited by Plymouth Rubber provide further support for affirming the decision below.  First, Plymouth Rubber cites a case in which the court found excusable neglect because the bar date notice was not sent to the creditor or its counsel as required under Bankruptcy Rule 2002, but instead was only sent to the creditor's managing agent. In re Arts des Provinces de France, Inc., 153 B.R. 144, 145 (Bankr. S.D.N.Y. 1993).  Notably, counsel for the creditor in that case had previously filed a notice of appearance in the bankruptcy case. Id.  Unlike Arts des Provinces, this is not a case in which the Debtors would "reap a

16

windfall" despite failing to comply with a notice requirement.  Id. at 147.  Here, the Debtors had

no obligation to serve the Notice on counsel who had not made any appearance in the Debtors'

chapter 11 cases.

Second, Plymouth Rubber cites In re Dartmoor Homes, Inc., 175 B.R. 659 (Bankr. N.D.

Ill. 1994), where the bankruptcy court found excusable neglect because the debtor failed to

schedule or otherwise give notice of the bar date to a known creditor, in violation of Bankruptcy

Rule 2002(f).  Id. at 669.  That case, however, does not apply to these facts.  The Debtors served

the Notice at the exact address provided on Plymouth Rubber's legal predecessor's proof of claim

form and at numerous business addresses, in compliance with Bankruptcy Rule 2002.  (D-7 at

143, 3806.)

Finally, Plymouth Rubber cites Farley Inc. v. Ohio Bureau of Workers' Compensation,

apparently for the proposition that where the debtor and creditor are equally to blame, the "'tie

goes to the [creditor].'"  213 B.R. 138, 143 (N.D. Ill. 1997) (quoting Dartmoor Homes, 175 B.R.

at 668).  As an initial matter, for the reasons discussed above, there is no basis for Plymouth

Rubber's contention that Plymouth Rubber and the Debtors share equal blame for Plymouth

Rubber's failure to timely file its administrative claim.  Moreover, in Farley, the district court

affirmed the bankruptcy court's decision finding excusable neglect, noting that "appellate review

of a bankruptcy court's conclusion of 'excusable neglect' is deferential, and thus reviewed for

abuse of discretion."  Id. at 141.  Applying the same deferential standard of review to the matter

at issue here, Plymouth Rubber cannot demonstrate that the Bankruptcy Court abused its

discretion.

B.    The Bankruptcy Court Properly Found That Granting The Motion Would Be Prejudicial

The Bankruptcy Court likewise did not abuse its discretion when it found that allowing a

late claim for $20 million could have a "very significant impact" on the feasibility of the

Modified Plan.  (P-17 at 52:14-15.)  Plymouth Rubber asserts that the Bankruptcy Court

committed clear error by relying on evidence set forth, among other places, in the declaration of

Keith Stipp (the "Stipp Declaration"), the Executive Director in charge of the Debtors'

restructuring, which was submitted in support of approval of the Modified Plan.  (Appellant's Br.

1, 23.)  Plymouth Rubber offers no support for this assertion, however.

    The Bankruptcy Court considered information contained in the Stipp Declaration in

determining that the Debtors would suffer prejudice if the Plymouth Rubber's Claim were

liquidated and allowed.  (P-17 at 51:9; 52:9-12.)  Plymouth Rubber's counsel stated in the

Bankruptcy Court that the demand number for its counterclaim was approximately $20 million.

(P-17 at 32:5-7; 52:7-9.)  Allowing Plymouth Rubber's late claim would be highly prejudicial to

the Reorganized Debtors because the Modified Plan was found to be feasible based on a

proposed budget to pay all timely filed administrative expense claims.  (D-8 ¶¶ 35, 39.)

    Plymouth Rubber contends that the Bankruptcy Court erred in considering relevant facts

contained in the Stipp Declaration on the grounds that the declaration itself was not placed

before the Bankruptcy Court in connection with the Motion, but that argument is not well-

founded.  The district court's treatment of a similar issue in Nalco Chemical Co. v. LTV Steel Co.

(In re Chateaugay Corp.), No. 92 Civ. 8722, 1993 WL 127180 (S.D.N.Y. Apr. 22, 1993), is

instructive.  In that case, the bankruptcy court made findings based upon representations by the

debtor's counsel, which in turn were based upon statements in a declaration that had been

presented to the bankruptcy court in connection with an earlier matter.  Id. at *5.  The district

court upheld the bankruptcy court's findings, in part because the debtor's counsel "accurately

represented [the] contents [of the declaration] to the [b]ankruptcy [c]ourt."  Id.  As with the

declaration in Chateaugay, the Stipp Declaration had been presented to the Bankruptcy Court in

connection with an earlier matter – the Debtors' motion seeking approval of modifications to the

Confirmed Plan, which was heard less than three weeks before Plymouth Rubber's Motion.  (D-9.)  And like the debtor's counsel in <u>Chateaugay</u>, the Debtors' counsel in this case accurately described the relevant portions of the declaration.  (P-17 at 28:8-15; 33:25 to 34:16.) Accordingly, the Bankruptcy Court did not err in considering or relying upon the facts derived from the. Stipp Declaration in deciding Plymouth Rubber's Motion.[3]

The cases cited by Plymouth Rubber do not hold otherwise and merely stand for the uncontroversial proposition that a trial court may not assume facts unsupported by any evidence in the record.  <u>See</u> <u>Heirs of Hodge v. Flynn</u>, No. 2:07cv40-KS-MTP, 2007 WL 2727263, at*4 (S.D. Miss. Sept. 17, 2007) (qualified immunity granted under 42 U.S.C. § 1983 action where there was no evidence of actions taken by defendant); <u>Mason v. City of Chicago</u>, 436 F. Supp. 2d 946, 954 (N.D. Ill. 2006) (no evidence in wrongful termination suit that other similarly situated employees were treated more favorably); <u>Hoyt v. Modern Millwork & Design, Inc.</u>, No. 3:97cv01804 JCH, 2000 WL 626903, at *4 (D. Conn. Mar. 27, 2000) (rejecting moving party's argument that they had no liability as fiduciary or plan administrator under ERISA when movant submitted no evidence showing that she was not fiduciary or plan administrator).

Another prejudicial element of the untimely Plymouth Rubber Claim is the fact that Plymouth Rubber did not file the claim until <u>after</u> the commencement of the Plan Modification Hearing on July 30, 2009.  (D-9 at 1.)  Plymouth Rubber questions why the Debtors did not take Plymouth Rubber's claim into account while analyzing outstanding administrative expense claims leading up to the July 29, 2009 hearing.  (Appellant's Br. 23.)  The answer is simple: neither the Debtors nor the Bankruptcy Court took Plymouth Rubber's claim into account

---

[3]    To the extent Plymouth Rubber complains that it did not have access to the Stipp Declaration, the relevant portions of the declaration were included, nearly verbatim, in the Debtors' omnibus reply brief in support of the modifications to the Confirmed Plan.  The Debtors filed the reply brief with the Bankruptcy Court on July 27, 2009.

because the claim was not filed until July, 30, 2009, <u>after</u> the commencement of the Plan

Modification Hearing and long after the Debtors negotiated and formulated modifications to their

Confirmed Plan.  Courts have recognized the heightened level of prejudice that results from

untimely claims that are filed late in the plan process.  <u>See</u>, <u>e.g.</u>, <u>Manousoff v. Macy's Northeast,</u>

<u>Inc.</u> (In re R.H. Macy & Co., Inc.), 166 B.R. 799, 802 (S.D.N.Y. 1994) (prejudice to debtor

includes not only size of late claim, but disruptive effect claim would have upon plan close to

completion); <u>In re New York State Trap Rock Corp.</u>, 153 B.R. 648, 652 (Bankr. S.D.N.Y. 1993)

(late claim filed one day after debtor filed plan obviously prejudicial to debtor because allowing

such claim would frustrate debtor's hope for prompt confirmation of plan).  Courts have also

acknowledged concerns about opening the floodgates to similar late-filed claims as a reason not

to allow late claims.  <u>See</u>, <u>e.g.</u>, <u>In re Enron Corp.</u>, 419 F. 3d 115, 132 (2d Cir. 2005); <u>In re Enron</u>

<u>Creditors Recovery Corp.</u>, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("It can be presumed in a

case of this size with tens of thousands of filed claims, there are other similarly-situated potential

claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors'

reorganization process." (citation omitted)).

　　　　For all of the reasons set forth above, the Bankruptcy Court did not abuse its discretion in

finding that the reason for the delay was "largely within the control of Plymouth [Rubber]" and

was prejudicial to the Debtors.  (P-17 at 51:5-6.)

III.
### THE DEBTORS DID NOT NEED TO MODIFY THE CONFIRMED PLAN
### <u>TO SET A NEW ADMINISTRATIVE CLAIMS BAR DATE</u>

　　　　Plymouth Rubber asserts that by obtaining an order setting the Administrative Claims Bar

Date, the Debtors improperly modified the Confirmed Plan without complying with 11 U.S.C. §

1127(b). (Appellant's Br. 11.)  In support of its position, Plymouth Rubber primarily relies on

<u>Cohen v. TIC Financial Systems</u> (In re Ampace Corp.), 279 B.R. 145 (Bankr. D. Del. 2002).

The holding by the <u>Ampace</u> court, however, actually supports the conclusion reached by the Bankruptcy Court here, <u>i.e.</u>, that the Administrative Claims Bar Date was properly modified without any need to first modify the Confirmed Plan pursuant to 11 U.S.C. § 1127(b).  <u>See</u> 279 B.R. at 153 (plan language expressly permitting deadlines to be modified by subsequent court order renders compliance with 11 U.S.C. § 1127(b) unnecessary).  In <u>Ampace</u>, the plan "clearly and unambiguously" set a time limit to object to claims and did not contain any language authorizing changes to the time limit.  <u>Id.</u>  The court noted that, as was often the case in reorganization plans, had the plan contained language that the deadline at issue could be extended upon motion by the bankruptcy court without notice and a hearing, "the Trustee could have unilaterally moved to extend the applicable deadline" without modifying the plan pursuant to 11 U.S.C. § 1127(b).  <u>Id.</u>; <u>accord</u> <u>Good v. Bascon, Inc.</u> (In re Heartland Steel, Inc.), No. IP 02-1252-C-M/F, 2003 WL 21508233, at *5 (S.D. Ind. June 26, 2003) (discussing <u>Ampace</u>'s reasoning on this point).

As explained by the Bankruptcy Court in its ruling below, the Confirmed Plan "itself contemplated, in the definition of 'administrative claim,' the potential for establishing a different administrative claims bar date than was set forth in the plan."  (P-17 at 40:22-25.)  Article 1.3 of the Confirmed Plan defined the Administrative Claims Bar Date as "the deadline for filings proofs of or requests for payment of Administrative Claims, which shall be 45 days after the Effective Date, <u>unless otherwise ordered by the Bankruptcy Court</u>."  (P-1 at § 1.3) (emphasis added).  Under the reasoning of <u>Ampace</u>, because the Confirmed Plan expressly provided that the Administrative Claims Bar Date could be modified by a subsequent bankruptcy court order, meeting the requirements of 11 U.S.C. § 1127(b) was not a prerequisite to modifying the Administrative Claims Bar Date.  <u>In re Ampace Corp.</u>, 279 B.R. at 153; <u>see also</u> <u>Hixon v. Poppin & Shier</u>, No. 88-15448, 1990 WL 4866, at *2 (9th Cir. Jan. 24, 1990) (changing bar date did not

constitute modification under 11 U.S.C. § 1127 when court changed deadline pursuant to power

reserved under plan).  Put another way, no modification to the language of the Confirmed Plan

was required to set a new Administrative Claims Bar Date because the Confirmed Plan stated

that the Administrative Claims Bar Date could be modified by subsequent Bankruptcy Court

orders.[4]

IV.

PLYMOUTH RUBBER'S APPEAL IS EQUITABLY MOOT

On June 20, 2009 the Debtors caused no fewer than nine copies of the Notice to be served

on Plymouth Rubber's predecessor at four different addresses.  (D-7 at 143, 3806.)  The Notice

stated that July 15, 2009 was the Administrative Claims Bar Date.  In the same solicitation

package containing the Notice, Plymouth Rubber received the Final Modification Hearing Notice,

informing it of (i) the Plan Modification Hearing, at which the Bankruptcy Court would consider

approval of the Modified Plan, then scheduled to commence on July 23, 2009, and (ii) the

deadline to file objections to the Modified Plan, which was July 15, 2009.  (D-7 at 3, 143, 3806.)

The Modification Hearing ultimately commenced on July 29, 2009 and concluded the next day.

By its own admission, Plymouth Rubber actually received the solicitation package on July 9,

2009, nearly two weeks before the actual commencement of the Plan Modification Hearing.  (P-

11 ¶ 24.)  Despite Plymouth Rubber's failure to object to, appeal from, or seek to stay either the

Modification Procedures Order or the Modification Approval Order, Plymouth Rubber now

seeks to collaterally attack these final orders after the substantial consummation of the Modified

---

[4]    Moreover, Plymouth Rubber's argument that the Debtors were required to serve them notice of the Modification
Procedures Motion is without merit.  (Appellant's Br. 13.)  Amended General Order M-279 provides that a
proposed bar date order may be submitted by notice of a motion on notice to any official committee, any debtor-
in-possession lender, any party requesting notice, and the U.S. Trustee.  See Bankr. S.D.N.Y. General Order M-
350: Amended Procedural Guidelines For Filing Requests For Bar Orders In The United States Bankruptcy
Court For The Southern District Of New York, at ¶ 2.  The Debtors established the Administrative Claims Bar
Date pursuant to the supplement to the Plan Modification Motion, which was served by in compliance with
Amended General Order M-279 and the instruction of the Bankruptcy Court.  (P-3 ¶ 70; P-4 at 3; P-7.)

Plan.  The substantially consummation of the Modified Plan, however, renders Plymouth Rubber's collateral attack equitably moot.

The Modification Approval Order, now a final order, found that the Modified Plan was feasible and complied with 11 U.S.C. § 1127.  (P-10 ¶¶ B, V.)  In that order, the Bankruptcy Court found that the Modified Plan was feasible based in part on Stipp Declaration, which stated that the budget of DPH Holdings Corp., which would become the successor to Delphi Corporation following the consummation of the Modified Plan, would be sufficient to pay all allowed administrative expense claims.  (P-10 ¶ V; D-8 ¶¶ 35, 39.)  The budget set forth in the Stipp Declaration was based on an analysis of the timely filed administrative expense claims in light of the Debtors' books and records.  Plymouth Rubber did not file its claim, however, until after the commencement of the Plan Modification Hearing.  (D-9 at 1.)  Accordingly, the Bankruptcy Court did not account for the Plymouth Rubber Claim (a claim that, according to Plymouth Rubber, may liquidate for $20 million) when it found that the Modified Plan was feasible.  (P-17 at 32:5-7; 52:7-9.)

Despite having actual knowledge of the hearing to approve the Modified Plan no later than July 9, 2009 (P-11 ¶ 24), Plymouth Rubber did not object to, appeal from, or seek to stay the Modification Approval Order.  Because Plymouth Rubber failed to object to, appeal from, or stay either the Modification Procedures Order or the Modification Approval Order, any collateral attack on such orders is now equitably moot because the Modified Plan has been substantially consummated.  See In re Chateaugay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993); In re Calpine Corp., 390 B.R. 508, 516 (S.D.N.Y. 2008) (when chapter 11 plan of reorganization has been substantially consummated, appeal should be dismissed as moot if implementation of relief

23

would be inequitable); <u>Windels Marx Lane & Mittendorf, LLP v. Source Enterprises, Inc.</u> (In re

Source Enterprises, Inc.), 392 B.R. 541, 548 (S.D.N.Y. 2008) (same).

  To overcome the presumption of mootness, appellant must establish <u>all</u> of the factors set

out by the Second Circuit in <u>Chateaugay</u>:

> (a) the court can still order some effective relief,
> (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity,
> (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place an create an unmanageable, uncontrollable situation for the Bankruptcy Court;
> (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
> (e) the appellant pursued with diligence all available remedies to obtain a stay of the objectionable order[,] if the failure to do so creates a situation where it would be inequitable to reverse the orders appealed from.

<u>Chateaugay Corp.</u>, 10 F.3d at 952-53; <u>Calpine Corp.</u>, 390 B.R. at 517.  It is doubtful that

Plymouth Rubber satisfies any of the <u>Chateaugay</u> factors, but it is undisputed that Plymouth

Rubber did not seek a stay of the Modification Procedures Order or the Modification Approval

Order.

  Indeed, the entire appeal should be dismissed as equitably moot because allowing the

Plymouth Rubber Claim could have a "very significant impact" on the feasibility of the Modified

Plan.  (P-17 at 52:14-15.); <u>See</u> <u>also</u> <u>In re US Airways Group, Inc.</u>, 369 F.3d 806, 809-10 (4th Cir.

2004) (appeal of order terminating pension dismissed as equitably moot when plan of

reorganization had been substantially consummated and appellant never attempted to stay order

terminating pension plan or confirmation order).  As the Fourth Circuit held in <u>US Airways</u>

<u>Group, Inc.</u>, "grant[ing] appellant's requested relief at the juncture . . . would jeopardize all of the

progress . . . made, both while in Chapter 11 and since emerging from bankruptcy.  And apart

from the damage inflicted on this massive reorganization plan, we would shake the reliance that

businesses, investors, and the public place on the finality of bankruptcy confirmation orders." Id.

Accordingly, this appeal should be dismissed as equitably moot.

CONCLUSION

For the reasons set forth above, the Reorganized Debtors respectfully request that this

Court affirm the Bankruptcy Court's Order denying Plymouth Rubber's Motion.

Dated: New York, New York
          November 9, 2009

SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
    John Wm. Butler, Jr.
    Albert L. Hogan, III
    John K. Lyons
  155 North Wacker Drive
  Chicago, Illinois 60606

– and –

By: /s/ Beverly A. Farrell
    Kayalyn A. Marafioti
    Beverly A. Farrell
  Four Times Square
  New York, New York 10036
  Email: Kayalyn.Marafioti@skadden.com
          Beverly.Farrell@skadden.com

  Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors