PEPPER HAMILTON LLP
Robert S. Hertzberg (RH 7433)
The New York Times Building, 37th Fl.
620 Eighth Avenue
New York, NY 10018-1405

-and-

Deborah Kovsky-Apap (DK 6147)
PEPPER HAMILTON LLP
Suite 3600
100 Renaissance Center
Detroit, MI 48243-1157
(313) 259-7110
*Attorneys for Plymouth Rubber Company, LLC*

**UNITED STATES DISTRICT COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

| | |
|---|---|
| In re: <br><br> DELPHI CORPORATION, <u>et al.</u>, <br><br>                 Debtors. | Chapter 11 <br><br> Bankr. Case No. 05-44481 (RDD) <br><br> (Jointly Administered) |
| Plymouth Rubber Company, LLC, <br><br>                 Appellant, <br><br> v. <br><br> Delphi Corp., <u>et al.</u>, <br><br>                 Appellees. | Case No. 1:09-cv-08408 <br><br> Hon. Naomi Reice Buchwald <br><br> **Oral Argument Requested** |

<u>**REPLY BRIEF OF APPELLANT PLYMOUTH RUBBER COMPANY, LLC**</u>

## TABLE OF CONTENTS

I. The Debtors Improperly Modified the Confirmed Plan without Complying with 11 U.S.C. § 1127(b) ..... 1

II. Plymouth Rubber's Late Filing Was the Result of Excusable Neglect ................................................. 4

III. Plymouth Rubber's Appeal is Not Equitably Moot ........................................................................ 7

IV. Conclusion ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Cohen v. TIC Financial Sys. (In re Ampace Corp.),
   279 B.R. 145 (Bankr. D. Del. 2002) ............................................................................... 3, 4

Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.),
   390 B.R. 508 (S.D.N.Y. 2008) ........................................................................................... 9

Good v. Bascon, Inc. (In re Heartland Steel, Inc.),
   2003 WL 21508233 (S.D. Ind. June 26, 2003) .................................................................. 3

Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.),
   62 F.3d 730 (5th Cir. 1995) ............................................................................................ 5, 6

Hixon v. Poppin & Shier,
   1990 WL 4866 (9th Cir. Jan. 24, 1990) ............................................................................. 3

In re Chateaugay Corp.,
   10 F.3d 944 (2d Cir. 1993) ................................................................................... 7, 8, 9, 10

In re David Green Prop. Mgmt.,
   164 B.R. 92 (Bankr. W.D. Mo. 1994) ................................................................................. 2

Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.),
   166 B.R. 799 (S.D.N.Y. 1994) ...................................................................................... 4, 5, 6

Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.),
   188 F.3d 116 (3d Cir. 1999) ........................................................................................ 4, 5, 6

Pro-Tec Servs., LLC v. Inacom Corp. (In re Inacom Corp.),
   2004 WL 2283599 (D. Del. Oct. 4, 2004) .......................................................................... 4

Windels Marx Lane & Mittendorf, LLP v. Source Ents., Inc. (In re Source Ents., Inc.),
   392 B.R. 541 (S.D.N.Y. 2008) ........................................................................................... 9

STATUTES

11 U.S.C. § 503(b)(9) ................................................................................................................ 1

11 U.S.C. § 1127(b) ............................................................................................................... 1, 3

In further support of its Appeal from Bankruptcy Court's Order Pursuant to 11 U.S.C. § 503(b)(9) and Fed. R. Civ. P. 3007 (I) Denying Plymouth Rubber Company, LLC's Motion for Leave to File Late Claims and (II) Disallowing and Expunging Proof of Claim Number 19506, Appellant Plymouth Rubber Company, LLC ("Plymouth Rubber")[1] respectfully states as follows:

## I. THE DEBTORS IMPROPERLY MODIFIED THE CONFIRMED PLAN WITHOUT COMPLYING WITH 11 U.S.C. § 1127(b)

In their brief, the Debtors do not dispute Plymouth Rubber's position that – absent a grant of power under the terms of a confirmed plan itself – a bar date established by such plan cannot be modified except by complying with the requirements of 11 U.S.C. § 1127(b). See Brief of Appellees DPH Holdings Corp., et al. (Formerly Known as Delphi Corporation, et al.) ("Appellees' Brief") at 20-22. The Debtors' argument that the Confirmed Amended Plan granted the bankruptcy court the power to dispense with the requirements of § 1127(b) rests entirely on a phrase in the Confirmed Amended Plan's definition of "Administrative Claims Bar Date": ". . . the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. . . ." Confirmed Amended Plan § 1.3. The Debtors contend that the phrase "unless otherwise ordered by the Bankruptcy Court" somehow confers upon the bankruptcy court the authority to modify the Confirmed Amended Plan without complying with the requirements of § 1127(b). See Appellees' Brief at 21.

The Debtors' attempt to interpret the Confirmed Amended Plan's definitional section as a broad grant of powers to the bankruptcy court overreaches. The language to which the Debtors point is definitional, not operative. It does not (and does not purport to) confer any particular power on the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Plymouth Rubber's Memorandum of Law in Support of Appeal from Bankruptcy Court's Order Pursuant to 11 U.S.C. § 503(b)(9) and Fed. R. Civ. P. 3007 (I) Denying Plymouth Rubber Company, LLC's Motion for Leave to File Late Claims and (II) Disallowing and Expunging Proof of Claim Number 19506 ("Appellant's Brief").

bankruptcy court. It simply defines what "Administrative Claims Bar Date" means. Significantly, Section 10.5, which is the operative section establishing the Administrative Claims Bar Date, contains no such qualifying language. It simply provides that administrative claims must be filed "no later than 45 days after the Effective Date." Confirmed Amended Plan § 10.5.

The court's reasoning with respect to the difference between definitional and operative language in In re David Green Prop. Mgmt., 164 B.R. 92 (Bankr. W.D. Mo. 1994), is instructive. In that case, a dispute arose over whether unsecured creditors were entitled to post-petition interest. The debtors asserted that post-petition interest was prohibited under the confirmed plan, which defined "allowed unsecured claim" as follows:

> **1.07 ALLOWED UNSECURED CLAIM** shall mean an Allowed Claim for which the Claimant has not asserted or is determined by a Final Order not to hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against the property of the Debtor or right to set-off to secure the payment of such Claim. *In no case shall this term include interest accrued from and after the Filing Date.* (emphasis added).

Id. at 96 (emphasis added by court). The court rejected the debtors' argument, noting that the provision that the debtors relied upon "merely defines what constitutes an unsecured claim, but does not govern terms of payment." Id. The court went on to explain that "Section 1.07 of the Plan is merely what it purports to be – a definition. It correctly states the definition of an unsecured claim, and correctly states that the face amount of an allowed unsecured claim does not include post-petition interest. However, *the definition section of the plan does not dictate the treatment or payment of claims*." Id. (emphasis added).

Likewise, the definition section of the Confirmed Amended Plan correctly states the definition of the Administrative Claims Bar Date, and correctly states that such definition is subject to change in the event that the bankruptcy court orders a different bar date than that originally contemplated. However, the definition does *not* dictate the manner in which the Confirmed Amended Plan may be

modified, or grant the bankruptcy court authority to modify the Confirmed Amended Plan without compliance with § 1127(b).

Moreover, the language of definitional section 1.3 is a far cry from the kind of language that other courts have found would authorize modification of a plan without compliance with § 1127(b). For example, in Cohen v. TIC Financial Sys. (In re Ampace Corp.), 279 B.R. 145 (Bankr. D. Del. 2002), the court explained that a plan clause providing that a time limit was "subject to being extended by the Bankruptcy Court upon motion of [Agent/Trustee/Committee] *without notice or a hearing*" would permit the modification of the plan's time limit without compliance with § 1127(b). Id. at 153 (emphasis added). For the Ampace court, the "without notice or a hearing" language was key, "[g]iven that the language in § 1127(b) provides that a modified plan 'becomes the plan only if . . . the court, *after notice and a hearing*, confirms such plan as modified'. . . ." Id. at 154 n. 20 (emphasis in original).

Similarly, in Hixon v. Poppin & Shier, 1990 WL 4866 (9th Cir. Jan. 24, 1990), one of the cases[2] cited by the Debtors, "the bankruptcy court extended the deadline pursuant to its broad power under Article VIII(g) of the Plan to extend any deadline specified by the Plan 'for cause' and 'as the court shall determine to be appropriate.'" Id. at *2. This is clearly a *specific grant of power* to the bankruptcy court.

In sharp contrast, the language on which the Debtors rely does not authorize modification of the Confirmed Amended Plan without prior notice to affected parties and a hearing. The Debtors' attempt to spin what is no more than definitional gloss into a grant of authority to dispense with the requirements of § 1127(b) is too great a leap. It is clear that the language in definitional section 1.3 is insufficient to confer upon the bankruptcy court the power to amend the operative provisions of section 10.5 of the Confirmed Amended Plan without compliance with § 1127(b). Since Plymouth Rubber had no notice

---

[2] Another case cited by the Debtors, Good v. Bascon, Inc. (In re Heartland Steel, Inc.), 2003 WL 21508233 (S.D. Ind. June 26, 2003), is inapposite because in that case, the court found that the notice and hearing requirements of § 1127(b) had actually been met. Id. at *5.

or opportunity to respond to the Debtors' motion seeking entry of the Modification Procedures Order – a fact which is not in dispute – the resulting order modifying the Confirmed Amended Plan's Administrative Bar Date is void as to Plymouth Rubber. Cf. Ampace, 279 B.R. at 154 n.20 (finding that in the absence of the notice and hearing required by § 1127(b), "as a matter of law, the orders granting the Trustee's Extension Motions are ineffective").

**II.   PLYMOUTH RUBBER'S LATE FILING WAS THE RESULT OF EXCUSABLE NEGLECT**

As the Debtors point out, courts have found that a bankruptcy court's determinations regarding excusable neglect are reviewed for abuse of discretion. See Appellees' Brief at 13. However, "[a] bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of the law to the facts." Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999) (citation omitted). In determining whether such an error exists, the lower court's application of the law to the facts is reviewed *de novo*. Id.; see also Pro-Tec Servs., LLC v. Inacom Corp. (In re Inacom Corp.), 2004 WL 2283599, at *2 (D. Del. Oct. 4, 2004) (explaining that even though the bankruptcy court's determination of excusable neglect was subject to review for abuse of discretion, "the court must review *de novo* whether the Bankruptcy Court engaged in a proper analysis under *Pioneer* to make its excusable neglect determination. . . .").

Similarly, in Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.), 166 B.R. 799 (S.D.N.Y. 1994), the court – without expressly articulating its standard of review – determined that the bankruptcy court had not properly applied the "prejudice" factor of the Pioneer test. Id. at 801-02.[3] There,

---

[3] Notably, in Manousoff, the bankruptcy court had also found, as weighing against the creditor's excusable neglect, that the quality of the notice given to the creditor was sufficient and that the reason for the delay was completely within the creditor's control. Id. at 801. The creditor did not challenge the bankruptcy court's findings with respect to those Pioneer factors; the only finding challenged by the creditor on appeal was the bankruptcy court's determination that allowance of the late claim would prejudice the debtor – but this was enough to require reversal and remand. Id. at 802 ("Accordingly, I reverse the order appealed from and remand the case to the bankruptcy court for further proceedings consistent with this opinion. The bankruptcy court should reconsider the factor of prejudice to the debtor, and having done so, reexamine the question of excusable neglect, of which prejudice to the debtors is only one of several factors.")

the bankruptcy court based its finding that there would be prejudice to the debtor because allowing the creditor's claim to be filed late "could result in a depletion of assets which would otherwise be available for distribution to other creditors." Id. at 801. The district court disagreed with this analysis: "But I read the *Pioneer* majority opinion as holding that prejudice to the debtor is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. Were it otherwise, virtually all late filings would be condemned by this factor; they seek to share, with timely filed claims, in the bankrupt's limited resources." Id. at 801-02. The Manousoff court noted that "[t]he boundaries of a more expansive concept of prejudice to the debtor are not entirely clear." Id. The court then suggested that "[t]he pertinent circumstances include the size of the late claim in relation to the estate and, closely related to the first, the disruptive effect the late filing would have upon a plan close to completion." Id.

The court in O'Brien – relying in part on Manousoff – reached the same conclusion under analogous circumstances. In that case, "[t]he bankruptcy court's prejudice analysis seemed to hinge solely on the fact that by virtue of Manus's failure to respond to the Application, its claim was not accounted for in the funding of the Plan." O'Brien, 188 F.3d at 126. The Third Circuit found that the lack of provision for the late claim in the funding of the debtor's plan did not constitute "prejudice" under Pioneer: "We believe that *Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay for the claim at issue." Id.

The court in Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.), 62 F.3d 730 (5th Cir. 1995) likewise rejected the debtor's argument that it would be prejudiced by a late-filed claim because it had formulated its plan based on its ability to identify the number and amount of allowed claims, and had not accounted for the late claims in its confirmed plan. Id. at 737-38. In both O'Brien and Eagle Bus, a key fact was that the debtors had actual notice of the late claims and could have chosen to take them into account in formulating their plans. O'Brien, 188 F.3d at 128 ("Thus, there is no question that O'Brien and NRG were aware of Manus's claim, and its amount, and that O'Brien had not contested its existence. This

is not a case where the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated."); Eagle Bus, 62 F.3d at 737-38 ("This is not a situation where the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim. . . . If Greyhound had in fact believed that these claims were barred it would not have allowed the Claimants to participate in the ADR and would not have negotiated with them for several months after passage of the bar date.").

Here, as in Manousoff, O'Brien and Eagle Bus, the bankruptcy court misapplied the "prejudice" factor of the Pioneer test. The bankruptcy court determined, in essence, that deeming Plymouth Rubber's claim to be filed timely would prejudice the Debtors because the Debtors could be required to pay more money than they had anticipated when the Modified Plan was approved. See P-17 at 43:25 – 44:15. However, the depletion of the Debtors' assets does not constitute "prejudice" within the meaning of the Pioneer test. Manousoff, 166 B.R. at 801-02. Nor are the Debtors "prejudiced" simply because they chose to ignore Plymouth Rubber's claim when formulating their plan– particularly given the fact they had actual knowledge of that claim *before* the Debtors began assessing administrative claims for purposes of the plan modification hearing. See P-17 at 25:16-18; O'Brien, 188 F.3d at 128; Eagle Bus, 62 F.3d at 737-38. Like the debtors in O'Brien and Eagle Bus, the Debtors could have taken Plymouth Rubber's claim into account in formulating the Modified Plan. Even if the Debtors believed that Plymouth Rubber's claim would be barred as untimely, such belief is not enough to constitute prejudice. Eagle Bus, 62 F.3d at 738. Indeed, just like the debtor in Eagle Bus, the Debtors continued to negotiate and participated in ADR with Plymouth Rubber *after* the Modified Bar Date, suggesting that the Debtors did not really believe (or at least questioned) whether Plymouth Rubber's claim would be barred.

Applying instead the "pertinent circumstances" suggested by the Manousoff court – the size of the late claim in relation to the estate and the disruptive effect the late filing would have upon a plan close to completion – it is clear that Plymouth Rubber's claim poses no risk of prejudice to the Debtors. As previously noted, Plymouth Rubber's claim is less than 2% of the over $1 *billion* in administrative claims,

*plus unliquidated amounts*, that were asserted on or before the Modified Bar Date. P-17 at 29:13-18. Plymouth Rubber's claim is even less significant in light of the hundreds of administrative claims, totaling tens of millions of dollars, plus unliquidated amounts, that have been filed since the Modified Bar Date.[4] If *those* administrative claims pose no problem for the Debtors – even though their amounts had not yet been asserted when the Modified Plan was negotiated – it defies reason that Plymouth Rubber's claim could have any disruptive effect on the plan.

Not only did the bankruptcy court misapply the "prejudice" factor of the <u>Pioneer</u> test, it applied the factor to facts not in evidence. Contrary to the Debtors' assertions, Plymouth Rubber does *not* argue that it was improper for the bankruptcy court to consider facts contained in the Stipp Declaration without having the Stipp Declaration physically before it. <u>See</u> Appellees' Brief at 17-19. Plymouth Rubber's argument is that it was improper for the bankruptcy court to rely on "evidence" set forth *nowhere* in the record. The bankruptcy court relied on representations of counsel that no money had been allocated to Plymouth Rubber's claim in the funding for the Modified Plan, and that the amount of Plymouth Rubber's claim was material to the Modified Plan's feasibility. <u>See</u> Appellant's Brief at 22-23. Yet the Stipp Declaration is devoid of any support for these assertions. <u>See</u> D-8.

Because the bankruptcy court misapplied the "prejudice" factor, and furthermore applied it to "facts" not supported by the record, its conclusion that Plymouth Rubber failed to meet the <u>Pioneer</u> test for excusable neglect was an abuse of discretion and must be reversed.

## III. PLYMOUTH RUBBER'S APPEAL IS NOT EQUITABLY MOOT

Assuming that the Debtors' bald assertion that the Modified Plan has been substantially consummated is correct, Plymouth Rubber's appeal nonetheless is not equitably moot because Plymouth Rubber can establish all of the factors set out by the Second Circuit in <u>In re Chateaugay Corp.</u>, 10 F.3d 944

---

[4] The Modified Plan allowed new administrative claims arising on or after June 1, 2009 to be filed as late as 30 days after the Effective Date. D-4 at § 10.5.

(2d Cir. 1993) to overcome any alleged presumption of mootness. In <u>Chateaugay</u>, the Second Circuit noted that while substantial consummation of a plan is "a momentous event," "it does not necessarily make it impossible or inequitable for a court to grant effective relief." <u>Id.</u> at 952. The Second Circuit identified five factors that would overcome a presumption of mootness where a plan has been substantially consummated:

> (a)  the court can still order some effective relief;
>
> (b)  such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
>
> (c)  such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;
>
> (d)  the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
>
> (e)  the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the order appealed from.

<u>Id.</u> at 952-53 (internal quotation marks and citation omitted).

Here, the court can clearly order effective relief simply by reversing the order appealed from and directing the bankruptcy court to deem Plymouth Rubber's claim filed timely. The Debtors would then have the opportunity to further litigate and liquidate Plymouth Rubber's claim on the merits – just like all of the other unliquidated administrative claims filed in the case.

The relief requested will have no effect on the Debtors' emergence as a "revitalized corporate entity" because the Debtors, having sold substantially all of their operating assets, will not emerge as a "revitalized corporate entity" in any event. Plymouth Rubber's claim is asserted against the entity left behind after the sale of assets, and will have no effect whatsoever on the operating entity that emerged from the sale.

Deeming Plymouth Rubber's claim filed timely will not cause a single transaction to unravel, much less any intricate transaction. In the cases that the Debtors cite in their attempt to show that

Plymouth Rubber's appeal should be deemed moot, the relief requested was extraordinary and substantial. In one case, the creditor sought to undo substantive consolidation, reclassify creditors and have portions of the plan deemed to violate the Bankruptcy Code. Windels Marx Lane & Mittendorf, LLP v. Source Ents., Inc. (In re Source Ents., Inc.), 392 B.R. 541, 551 (S.D.N.Y. 2008). In another case, creditors sought "a new valuation hearing and to have an additional 300 million shares of New Calpine Stock issued and reserved for future distribution to Old Calpine shareholders in accordance with the Bankruptcy Court's findings." Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.), 390 B.R. 508, 519 (S.D.N.Y. 2008). Here, by contrast, Plymouth Rubber is merely seeking approval for the late-filing of its administrative claim, which though filed two weeks late was at all times well-known to the Debtors, and which totals less than 2% of the aggregate liquidated administrative claims in the case.

The only parties that would appear to be adversely affected by the relief sought by Plymouth Rubber are the Debtors, because they would be required – if Plymouth Rubber's claim were allowed – to pay what they owe on Plymouth Rubber's claim. This is not a basis for equitable mootness. Chateaugay, 10 F.3d at 954 ("[A] case is not mooted by the fact that an impecunious judgment debtor may lack the means to satisfy a judgment. . . .") (internal quotation marks and citations omitted). Furthermore, the Debtors have presented no evidence that they *would* have any difficulty in paying Plymouth Rubber its full claim, if allowed.

Finally, the fact that Plymouth Rubber did not seek a stay of proceedings in the bankruptcy court (which would have been all but certain to be an exercise in futility) is irrelevant.[5] The fifth Chateaugay factor applies only "*if* the failure to [seek a stay] creates a situation rendering it inequitable to reverse the

---

[5] The Debtors suggest that Plymouth Rubber should have appealed from or sought a stay of either the Modification Procedures Order or the Modification Approval Order. It is clear, however, that the Modification Approval Order did not establish the Modified Bar Date, since it could not do so retroactively. Thus, there was no reason for Plymouth Rubber to appeal from or seek a stay of the Modification Approval Order. The order that purported to modify the Administrative Claims Bar Date, and to cut off Plymouth Rubber's rights, was the Modification Procedures Order. It is undisputed that Plymouth Rubber did not have notice of the Modification Procedures Order. Accordingly, Plymouth Rubber had no opportunity to object to, appeal from or seek to stay the Modification Procedures Order.

order appealed from." Chateaugay, 10 F.3d at 953 (emphasis added). There is nothing in the current situation – where the Debtors still face dozens if not hundreds of unliquidated administrative claims, where additional administrative claims were still being timely filed as late as 30 days *after* the Effective Date, and where Plymouth Rubber's full asserted claim constitutes less than 2% of the liquidated administrative claims against the Debtors – that would render it inequitable to deem Plymouth Rubber's claim timely filed.

Since Plymouth Rubber can satisfy each of the Chateaugay factors, its appeal is not equitably moot.

## IV. CONCLUSION

For the foregoing reasons, Plymouth Rubber respectfully requests that the Court reverse the order of the bankruptcy court and direct that an order be entered reinstating Plymouth Rubber's Administrative Claim and deeming the Administrative Claim to be filed timely.

Dated: November 30, 2009

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ Robert S. Hertzberg
Robert S. Hertzberg (RH 7433)
The New York Times Building, 37th Fl.
620 Eighth Avenue
New York, NY 10018-1405
(212) 808-2700
hertzbergr@pepperlaw.com

-and-

Deborah Kovsky-Apap (DK 6147)
Suite 3600
100 Renaissance Center
Detroit, MI 48243
(313) 259-7110
kovskyd@pepperlaw.com

*Attorneys for Plymouth Rubber Company, LLC*